Argued and submitted May 7, 2001, reversed and remanded July 17, 2002

WESTWOOD CONSTRUCTION COMPANY,
nka W. C., Inc.,
an Oregon corporation,
*Respondent,*

*v.*

HALLMARK INNS & RESORTS, INC.,
a foreign corporation,
and United States National Bank,
a foreign corporation,
*Appellants,*

*and*

THE HOLMES COMPANIES, INC.,
dba Siteco-Little Iron Works,
an Oregon corporation;
Tualatin Electric, Inc.,
an Oregon corporation;
Oceanlake Enterprises, Inc.,
an Oregon corporation;
Allied Building Products, Inc.,
an Oregon corporation;
Bewley Mechanical Systems, Inc.,
an Oregon corporation;
Advanced Fire Protection, Inc.,
an Oregon corporation;
and West Coast Coatings, Inc.,
an Oregon corporation,
*Defendants.*

96-2968; A104388

50 P3d 238

Joseph A. Yazbeck, Jr., argued the cause for appellants. With him on the briefs were Tamara H. Lewis, Allen, Yazbeck, O'Halloran & Hanson, P.C., Ted E. Runstein and Kell Alterman & Runstein LLP.

Arnold L. Gray argued the cause for respondent. With him on the brief were Jeffrey B. Wilkinson and Stewart Sokol & Gray, LLC.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

## LINDER, J.

This appeal, which arises from an action to foreclose a construction lien, raises three issues: (1) whether, in a construction lien foreclosure action, preclusive effect should be given to common issues decided in arbitration pursuant to the parties' construction contract; (2) whether evidence that the lien for more than $1.2 million was overstated by more than $400,000 (approximately 34 percent) is sufficient to give rise to a jury question on the validity of the lien; and (3) whether an award of attorney fees pursuant to ORS 87.060(5) may include work performed in arbitration as well as work done at trial in the lien foreclosure action. For the reasons amplified below, we agree with the trial court that the common issues decided in arbitration were binding in the foreclosure action. Contrary to the trial court's determination, however, we conclude that there is a triable issue of fact as to whether the amount of the lien was overstated in such a way as to invalidate it. Finally, because the attorney fees issue is likely to arise on remand, we resolve that issue and conclude that an award of attorney fees to whichever party prevails in this action may include a reasonable amount for work performed in the arbitration proceedings. We therefore reverse and remand.

The pertinent facts are largely undisputed. Hallmark Inns & Resorts, Inc. (Hallmark)[1] is a resort developer. Westwood Construction Co. (Westwood) is a company that builds, among other things, resort properties. In September 1994, Hallmark and Westwood entered into a contract for the construction of a multi-unit hotel complex on the Oregon coast. Various disputes arose in the construction of the hotel and, on February 14, 1996, Westwood filed a construction lien on the hotel property pursuant to ORS 87.010(1),[2]

---

[1] United States National Bank is a coappellant with Hallmark. Throughout our opinion, we refer only to Hallmark because their interests are the same.

[2] ORS 87.010(1) provides:

"Any person performing labor upon, transporting or furnishing any material to be used in, or renting equipment used in the construction of any improvement shall have a lien upon the improvement for the labor, transportation or material furnished or equipment rented at the instance of the owner of the improvement or the construction agent of the owner."

claiming that Hallmark owed Westwood $1.2 million on the contract for the project.[3]

In June 1996, Westwood filed an action to foreclose the lien and joined with that action claims against Hallmark for breach of contract and *quantum meruit*. As an affirmative defense to the lien foreclosure, Hallmark asserted that the lien was untimely because it was not filed within 75 days of the date of the substantial completion of the hotel, as required by ORS 87.035.[4] Pursuant to the parties' contract, the breach of contract and *quantum meruit* claims were submitted to arbitration. The trial court abated the lien foreclosure action pending the outcome of the arbitration proceeding.

In arbitration, Hallmark and Westwood submitted the issue of the date of substantial completion to the arbitrators. The parties emphasized to the arbitrators the importance of that date (*i.e.*, that it would determine the timeliness of Hallmark's lien) and they took adverse positions on the issue. In particular, Hallmark argued that substantial completion occurred on November 14, 1995, which was the hotel's grand-opening date. Westwood, on the other hand, argued that substantial completion occurred later because Westwood continued construction work for several months after the grand-opening date. After what the parties mutually characterize as a lengthy and expensive arbitration, the arbitrators rendered an award in which they determined, among other things, that substantial completion occurred on

---

[3] Westwood also sought the recovery of recording fees, interest, and attorney fees in the lien action.

[4] ORS 87.035 provides, in part:

"(1) Every person claiming a lien created under ORS 87.010 (1) or (2) shall perfect the lien not later than 75 days after the person has ceased to provide labor, rent equipment or furnish materials or 75 days after completion of construction, whichever is earlier. Every other person claiming a lien created under ORS 87.010 shall perfect the lien not later than 75 days after the completion of construction. All liens claimed shall be perfected as provided by subsections (2) to (4) of this section.

"(2) A lien created under ORS 87.010 shall be perfected by filing a claim of lien with the recording officer of the county or counties in which the improvement, or some part thereof, is situated."

"Completion of construction" occurs when, *inter alia*, the "improvement is substantially complete." ORS 87.045(1)(a).

December 7, 1995. That date is within 75 days of the date on which Westwood filed its lien, as required for timely filing under ORS 87.035.

Hallmark sought reconsideration of the arbitrators' award on several issues including the date of substantial completion. Although the arbitrators granted Hallmark's request for reconsideration, they reaffirmed their original conclusion as to the date of substantial completion (*i.e.*, December 7, 1995). The arbitrators' award was entered as a court judgment pursuant to ORS 36.350(1), and Hallmark paid that judgment.

After the arbitration, the lien foreclosure action in circuit court was reactivated and that proceeding resumed. Westwood moved for summary judgment, asserting that it was entitled to foreclosure in the amount of $840,180. In support of its motion, Westwood argued that there was no dispute of fact as to the timeliness of the lien, because the arbitrators had determined the substantial completion date to be December 7, 1995, and that date was binding in the foreclosure action. Westwood acknowledged that the lien could be foreclosed only for the amount that the arbitrators had determined Hallmark owed Westwood under the contract, which was $840,180. Although that amount was considerably less than the amount of the lien filed by Westwood (*i.e.*, $1,268,248), Westwood argued that there was no evidence that the difference represented anything other than a good faith dispute as to the amount owing and that it therefore was entitled to judgment in the amount of $840,180 as a matter of law.

Hallmark cross-moved for summary judgment arguing, among other points, that the lien was time barred as a matter of law. In that regard, Hallmark asserted that the trial court was required independently to decide the date of substantial completion, regardless of what the arbitrators had determined. Hallmark further urged that there was no triable issue of fact as to the date of substantial completion because the only permissible conclusion on the summary judgment record was that construction was substantially complete as of the hotel's grand opening, which occurred more than 75 days before Westwood filed its lien.

In addition to filing a cross-motion for summary judgment, Hallmark responded to Westwood's motion by arguing that a fact question was presented as to whether the lien was overstated in such a way as to invalidate it. Thus, according to Hallmark, even if the arbitrator's determination was binding and the lien must therefore be considered timely filed, there still existed a dispute of material fact that precluded granting judgment in Westwood's favor.

The trial court agreed with Westwood that the arbitrator's determination of the date of substantial completion should be given preclusive effect in the foreclosure action. Because the substantial completion date stated in the arbitrators' award was within 75 days of the date on which Westwood filed its lien, the trial court concluded that the lien was not time barred. The trial court further concluded that there were no disputed issues of material fact. As a result, the trial court determined that Westwood was entitled to judgment as a matter of law and therefore granted Westwood's motion for summary judgment and denied Hallmark's cross-motion. Additionally, the trial court awarded Westwood attorney fees, including an amount for its work during the arbitration.

■　　On appeal, Hallmark first assigns error to the trial court's grant of summary judgment, arguing that the trial court erred in concluding that the arbitrators' determination of the date of substantial completion was binding in the foreclosure action.[5] In that regard, Hallmark advances two arguments. First, Hallmark relies on our decision in *Westwood Corp. v. Bowen*, 108 Or App 310, 815 P2d 1282 (1991), *rev dismissed* 312 Or 589 (1992), as controlling. According to Hallmark, we concluded in *Westwood* that the trial court in a construction lien foreclosure action is statutorily charged with determining when substantial completion occurs and that principles of issue preclusion are displaced by that

---

[5] Hallmark's first assignment of error includes the related but ultimately separate issue of whether the trial court erred in denying its cross-motion for summary judgment. *See To v. State Farm Mutual Ins.*, 123 Or App 404, 411, 860 P2d 294 (1993), *aff'd in part and rev'd in part on other grounds* 319 Or 93, 873 P2d 1072 (1994) (fact that a trial court errs in granting one party's motion for summary judgment does not mean that the trial court necessarily erred in denying a cross-motion for summary judgment). We do not reach Hallmark's arguments in that regard given our conclusion that the arbitrator's determination was properly given issue preclusive effect.

requirement. Hallmark argues alternatively that, even if issue preclusion applies, the elements for preclusion are not satisfied in this case, because a determination of the date of substantial completion was not necessary and essential to the arbitration proceeding under the terms of the parties' construction contract.

■      We begin with Hallmark's reliance on our decision in *Westwood Corp.* In *Westwood Corp.*, a lien foreclosure action was joined with the parties' contract claims and counterclaims pursuant to a statute that provides for such joinder in a lien foreclosure action. *See* ORS 87.060(3). The contract claims and counterclaims were tried to a jury at the same time that the lien foreclosure action was tried to the court. *Westwood Corp.*, 108 Or App at 313. The jury and the court reached different conclusions on the amount of damages, and the court entered a judgment on the lien foreclosure consistent with its own determination, which was substantially less than the amount that the jury had awarded on the contract claims. *Id.* at 314. The defendant appealed, challenging the entry of a judgment in the lesser amount. As we described the defendant's arguments, they were a blend of issue preclusion (generically referred to as "*res judicata*"), law of the case, and constitutional right-to-jury-trial principles. *Id.* at 313-14. In rejecting the defendant's issue preclusion argument, we disavowed the conclusions of courts in other jurisdictions that issue preclusion can apply from "one claim to another in a single lawsuit." *Id.* at 315. We adhered instead to our holding in *Office Services Corp. v. CAS Systems, Inc.*, 63 Or App 842, 845, 666 P2d 297, *rev den* 295 Or 773 (1983), that, "generally, the 'bar of *res judicata* applies to subsequent lawsuits and not to separate claims within the same lawsuit.' " *Id.* (emphasis omitted).[6] We then turned to the defendant's law of the case and jury trial arguments, which we rejected as well.

■ ■      Correctly understood—and as pertinent to this case—*Westwood Corp.* stands only for the proposition that issue preclusion does not bar relitigation of an issue common

---

[6] Older Oregon cases often loosely used the term "*res judicata*" to refer to both claim preclusion and issue preclusion. *See Drews v. EBI Companies*, 310 Or 134, 139, 795 P2d 531 (1990). Thus, both *Office Systems Corp.* and *Westwood* referred to "*res judicata*" principles even though the former case involved claim preclusion and the latter case involved issue preclusion.

to separate claims *when those claims are litigated as part of a single action or lawsuit.* Conversely, when an issue common to separate claims has been determined in a *prior separate* action, general principles of issue preclusion may apply. Thus, the threshold question that must be answered to determine *Westwood Corp.*'s application to this case is whether the contract arbitration was part of the lien foreclosure action or was a separate proceeding.

The statutes governing contractually bargained for arbitration answer that question by providing for arbitration proceedings that are independent of any circuit court action, both procedurally and jurisdictionally. When a party brings any action, suit, or proceeding "upon any issue arising out of an agreement which contains a provision for arbitration of the matter in controversy[,]" and upon a proper motion, the trial court "shall abate" the action if the court is satisfied that the issue is arbitrable. ORS 36.315. The arbitration then proceeds under the control of the arbitrators, who have the power to compel the attendance of witnesses, to administer oaths, to control the scheduling of their proceedings, and to decide "both the law and the facts involved in the cause submitted to them." ORS 36.335. The trial court's powers and responsibilities in connection with that arbitration are largely supplemental and administrative in nature. For example, in specified circumstances, the trial court assists the progress of the arbitration by appointing the arbitrators if no provision for their appointment was made in the agreement or if there is a vacancy in the arbitrators selected. *See generally* ORS 36.320. The trial court also enforces witness subpoenas issued by the arbitrators, if necessary, and assesses witness fees and other costs after the arbitration is concluded. *See* ORS 36.340; ORS 36.345.

When the arbitration is complete, the arbitrators' award is delivered to the circuit court for entry. ORS 36.350. If neither party files an exception to the award, the award is entered as a judgment and may be enforced with "like effect as upon a verdict in a civil case." *Id.* If a party files exceptions to the award, the circuit court may review the award only on narrow, statutorily specified grounds. Those grounds include procurement of the award by fraud, corruption, or undue

means; "evident" bias or partiality on the part of the arbitrators; misconduct in conducting the proceedings in such a way as to prejudice the rights of the parties; or an "evident material miscalculation of figures" in determining the award. *See generally* ORS 36.355(1). If the circuit court concludes that an exception has merit, the court does not modify the award itself, but instead refers the matter back to the arbitrators for correction or rehearing. ORS 36.360. The statute specifies that the circuit court itself acquires "jurisdiction over the case" and may "proceed to its determination" only if the arbitrators fail to correct or rehear the matter as instructed by the circuit court. *Id.*

■       As the statutory scheme makes clear, the arbitration is not a part of the action pending before the circuit court. Rather, the pending circuit court action is "abated" while the arbitrators exercise their jurisdiction over the contract disputes. Indeed, the statute specifically provides that the circuit court acquires "jurisdiction over the case and may proceed to its determination" in one limited circumstance only— *i.e.,*when a meritorious exception to the arbitrators' award has been taken and the arbitrators have refused to correct the award or rehear the matter as instructed by the circuit court. Unless and until that circumstance comes to pass, the circuit court exercises no jurisdiction over the merits of the issues submitted to arbitration. The arbitration thus is a distinct proceeding, both jurisdictionally and procedurally.

This case illustrates the statutory scheme in operation. Westwood's lien foreclosure action was joined with its contract and *quantum meruit* claims in a single circuit court action. Because of the contract's arbitration clause, however, that action was abated while the arbitration took place. The circuit court acquired no jurisdiction to determine the matters in arbitration, as would have occurred if meritorious exceptions to the award had been taken and the arbitrators had refused to comply with the court's instructions regarding those exceptions. Rather, neither party filed any exceptions and the award therefore was reduced to a judgment, which Hallmark then paid in full.

Given that procedural and jurisdictional posture, *Westwood Corp.* is not controlling in this case. In *Westwood*

*Corp.*, we declined to apply issue preclusion principles because the contract and lien foreclosure claims were part of a single action and were being tried simultaneously, albeit by different factfinders, in a common forum. That was not true here. Our rationale for refusing to apply issue preclusion principles in *Westwood Corp.* thus does not apply to this case. Nor can we identify any other rationale for declining to apply issue preclusion in this context. Inherent in the statutory scheme just outlined is a legislative policy that favors arbitration pursuant to contractual provisions providing for such arbitration and that provides specifically for abating judicial proceedings so that such arbitration can take place. To fail to give preclusive effect to matters resolved by arbitration, where the requirements for issue preclusion are otherwise satisfied, would frustrate that legislative design. We therefore decline to expand *Westwood Corp.*'s holding beyond its rationale to the significantly different procedural posture of this case.[7]

That conclusion takes us to the second prong of Hallmark's argument, which is that, even if *Westwood* is not controlling, the criteria for issue preclusion are not satisfied here. Specifically, Hallmark argues that resolution of the date of substantial completion was not necessary to resolve the parties' contractual disputes. In so arguing, Hallmark acknowledges that the parties submitted the issue to the arbitrators for their resolution; that the parties urged the importance of the issue's resolution and actively litigated it before the arbitrators; that the arbitrators in fact decided the issue; and that Hallmark then sought reconsideration of the merits of the decision, urging the arbitrators to resolve it in

---

[7] In *Shuler v. Distribution Trucking Co.*, 164 Or App 615, 994 P2d 167 (1999), *rev den* 330 Or 375 (2000), we acknowledged and adhered to the well-settled rule that issue preclusion principles may apply to matters decided in a prior arbitration as well as in a prior judicial proceeding. We further acknowledged, however, that there are exceptions to that rule, such as where a scheme of remedies reflects a preference for litigating a matter in the second forum, notwithstanding the prior arbitration. *Id.* at 624. In this instance, the legislature's express policy choice is to abate related circuit court proceedings until the arbitration is concluded and to foreclose the circuit court's jurisdiction over the merits of those matters unless the arbitrators fail in their responsibility to decide them. Thus, that statutory scheme reinforces a conclusion that matters decided in arbitration should have issue preclusion effect in later circuit court proceedings, rather than the opposite.

Hallmark's favor. Nevertheless, according to Hallmark, the arbitrators were not *required* to determine the date of substantial completion to resolve the parties' other contractual disputes and that issue therefore was not "necessary and essential" to the arbitrators' award. *See Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (issue preclusion is appropriate where, among other requirements, the issue was "actually litigated and was essential to a final decision on the merits" in the prior proceeding). Thus, in Hallmark's view, the trial court was obligated to resolve the issue anew despite the significant commitment of resources and effort that had gone into the arbitrators' express determination of the same issue.

There are two problems with Hallmark's position. The first is the language of the arbitration clause in the contract: "Any controversy or Claim arising out of or related to the contract, or the breach thereof, shall be settled by arbitration[.]" Under the parties' agreement, arbitration is not limited to Claims, but extends to "any controversy." Moreover, arbitrable matters include not only those "arising out of" the contract but also those that are merely "related to" it. The parties' dispute as to when the work under the contract was substantially complete easily fell within the broadly worded scope of the contract's arbitration clause.

The second problem with Hallmark's position is its assumption that an issue must always be "essential" or "necessary" to a prior determination to have issue preclusive effect. To be sure, cases often refer to whether a previously resolved issue was essential or necessary to a prior adjudication as a means of ensuring, especially in the context of a general verdict or judgment, that the issue was actually litigated and determined in the prior proceeding.[8] But the issue preclusion doctrine is not limited by that requirement. ORS

---

[8] *See generally Heller v. Ebb Auto Co.*, 308 Or 1, 5-6, 774 P2d 1089 (1989) (stating general necessity requirement; citing ORS 43.160); *State v. Donovan*, 305 Or 332, 337, 751 P2d 1109 (1988) (if the jury returns a general verdict, no single element is "necessarily determined"); *Harvey et al. v. Getchell et al.*, 190 Or 205, 215, 225 P2d 391 (1950) ("Certainty is an essential element, and unless it is shown that the judgment necessarily involved a determination of the fact sought to be concluded in the second suit, there will be no bar.") (quoting authorities).

43.160, which had its genesis in the common-law principle of issue preclusion,[9] provides:

> "That only is determined by a former judgment, decree or order *which appears upon its face to have been so determined or* which was actually and necessarily included therein or necessary thereto."

(Emphasis added.) By the statute's plain terms, when the face of a judgment or order in a prior proceeding demonstrates that a matter was actually determined, the determination is preclusive. *See Clawson et ux v. Prouty et ux*, 215 Or 244, 253, 333 P2d 1104 (1959) (where an issue was decided and appeared on the face of a prior order, ORS 43.160 rendered it conclusive between the parties in subsequent litigation). The issue must have been "necessarily" resolved by a prior adjudication only if the face of a prior judgment or order does not demonstrate that it was in fact resolved. In the context of arbitration proceedings, the same principles logically extend to the arbitration award memorializing the arbitrator's determinations. *See Shuler v. Distribution Trucking Co.*, 164 Or App 615, 624, 994 P2d 167 (1999), *rev den* 330 Or 375 (2000) (quoting with approval the *Restatement (Second) of Judgments* § 84(1) for the proposition that a "valid and final award by arbitration has the same effects under the rules of *res judicata,* subject to the same exceptions and qualifications, as a judgment of the court").

■ In this case, the arbitrators issued a written award detailing their resolution of the issues submitted for their decision. The second item listed under the "award" section of the order expressly determined: "The project was substantially complete December 7, 1995." In seeking reconsideration of that determination, Hallmark did not argue that the arbitrators should not have decided the issue or that the issue was not necessary to decide. To the contrary, Hallmark urged the arbitrators to adopt a different date. The arbitrators rejected Hallmark's position on the merits, stood by their original decision, and issued a revised award that affirmed the arbitrators' original determination that the date of substantial completion was December 7, 1995. Because the face

---

[9] *State v. Rogers*, 313 Or 356, 374, 836 P2d 1308 (1992) (citing *State v. Dewey*, 206 Or 496, 504-08, 292 P2d 799 (1956)).

of the award established that the arbitrators actually determined the issue, that criterion for issue preclusion was satisfied. *See Clawson,* 215 Or at 253 (same conclusion where face of prior order revealed issue was actually decided). Hallmark does not argue that any of the other criteria for issue preclusion are not satisfied in this case.[10] Thus, the trial court correctly gave preclusive effect to the arbitrators' determination of the relevant date and correctly determined that the lien was timely filed.

We turn to Hallmark's second assignment of error, which challenges the grant of summary judgment on the ground that the record discloses the existence of a disputed issue of material fact—*i.e.,* whether Westwood's lien was overstated intentionally or through culpable negligence. A lien must contain a true statement of demand. ORS 87.035(3)(a). Consequently, an overstatement of demand will invalidate the lien if it is an "intentional one or one made through culpable negligence." *Hays v. Pigg,* 267 Or 143, 147, 515 P2d 924 (1973). For a negligent overstatement to invalidate a lien, that overstatement must be so "grossly and palpably negligent as to raise a presumption of fraud." *A-C Const. Inc. v. Bakke Corp.,* 153 Or App 41, 47, 956 P2d 219 (1998) (quoting *Farrell v. Brown,* 258 Or 348, 355, 483 P2d 453 (1971)). In this case, there is no dispute that the lien demand was overstated by $428,068, which represents the difference between Westwood's lien demand ($1,268,248) and the amount that the arbitrators determined that Hallmark owed to Westwood under the contract ($840,180). Relying on that difference, Hallmark argues that there was a genuine issue of material fact as to whether the lien was intentionally or negligently overstated in such a way as to invalidate it. Westwood responds that summary judgment in Westwood's favor was proper because "[n]o evidence exists in this record that Westwood's lien claim was anything but a good faith statement of the contract balance believed to be due."

---

[10] The other criteria for issue preclusion are that: the issue in the two proceedings is identical; the party sought to be precluded has had a full and fair opportunity to be heard on that issue; the party sought to be precluded was a party or was in privity with a party in the prior proceeding; and the prior proceeding was the type of proceeding to which this court will give preclusive effect. *Nelson,* 318 Or at 104. Hallmark does not dispute that those other elements are satisfied.

As the parties' arguments suggest, we are faced with a particularly limited record. In moving for summary judgment in its favor, Westwood asserted that the overstatement was a result of a good faith difference of opinion as to the correct amount due under the contract and that the lien was therefore valid. Hallmark, in response, asserted that it could produce evidence, much of it in the form of testimony and transcripts from the arbitration proceeding, that would show that the lien was· "invalid as overstated." But Hallmark did not produce that evidence, asserting instead that a factual question was presented and such evidence would be appropriate when the issue was submitted to a factfinder.[11] Thus, as the case comes to us on appeal, the record establishes that the lien demand was overstated by $428,068. Although the parties disputed whether the overstatement was made for reasons and under circumstances that would invalidate the lien, neither party presented evidence beyond the fact of the overstatement itself.

We agree with Hallmark that the limited summary judgment record before us creates a fact question as to whether the overstatement was of such a nature as to invalidate the lien. Our conclusion is driven in significant part by the parties' relative burdens of production at the summary judgment stage. The trial court decided the parties' motion for summary judgment, and Hallmark filed its notice of appeal, before the effective date of the 1999 amendment to ORCP 47 C.[12] As a result, Westwood had the burden to establish the absence of a genuine issue of material fact on the point at the summary judgment stage, because Westwood was the moving party. *See Robinson v. Lamb's Wilsonville*

---

[11] In particular, in the summary judgment submissions, Hallmark argued that "[t]he evidence relating to [Westwood's] non-performance and the credits owing to Hallmark will demonstrate that [Westwood's] lien is invalid as overstated." It then relied on the affidavit of Hallmark's attorney, who stated:

"I know there are volumes of transcripts of testimony on the issues of [Westwood's] non-performance and Hallmark's entitlement to credits. However, attaching the volumes of transcripts of testimony on these issues at this juncture would simply fill up the record for no purpose, because the court obviously cannot decide the factual issues of the extent of [Westwood's] non-performance and the extent of Hallmark's entitlement to credits on summary judgment."

[12] Or Laws 1999, ch 815, § 1.

*Thriftway*, 332 Or 453, 460, 31 P3d 421 (2001) (under pre-1999 version of ORCP 47 C, party moving for summary judgment had burden of production on all issues, even those which opposing party would have to prove at trial). The burden fell on Westwood in that regard even thought Hallmark raised the invalidity of the lien as an affirmative defense and would have had the burden of persuasion on the point at trial. *Id.* Other than to assert by way of argument that the $428,068 overstatement was made in good faith and to rely on a copy of the lien, Westwood presented no evidence whatsoever in support of that assertion. At least if unexplained, the amount of the overstatement, which represented about 34 percent of the more than $1.2 million lien demand, provides some basis for a reasonable juror to infer that the lien was overstated intentionally or through culpable negligence. *See Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997) (on review of summary judgment, we "view the evidence and all reasonable inferences that may be drawn from the evidence" in favor of the adverse party). The trial court's grant of summary judgment in Westwood's favor was therefore error.

■■ Hallmark's third and fourth assignments of error challenge the trial court's award of attorney fees to Westwood. ORS 87.060(5) provides, in relevant part:

> "In a suit to enforce a lien perfected under ORS 87.035 the court shall allow a reasonable amount *as attorney fees at trial and on appeal* to the party who prevails on the issues of the validity and foreclosure of the lien."

(Emphasis added.) Pursuant to that provision, the trial court awarded to Westwood, as the prevailing party on the issues of lien validity and foreclosure, attorney fees in an amount that included work performed by Westwood's attorneys in the arbitration proceeding. Hallmark contends that the trial court erred in calculating the amount of the award, arguing that the statute's reference to "fees at trial" do not include fees at arbitration. Because the issue is likely to arise on remand regardless of which party prevails, we reach and resolve it.

The Supreme Court's decision in *Harris v. Dyer*, 292 Or 233, 637 P2d 918 (1981), is on point and controlling. In

*Harris*, the court addressed the identical issue under the former version of the statute authorizing attorney fees in a construction lien foreclosure action. As the statute was then drafted, it provided for the trial court to allow "a reasonable amount as attorney fees to the prevailing party" in a lien foreclosure action. ORS 87.060(4) (1979). The court concluded that the statute did not authorize an award of attorney fees for work performed in arbitration, which the court noted is not legally required as a phase of a lien proceeding but rather is contractually provided for as an alternative to litigation, on terms that the parties themselves select. *Harris*, 292 Or at 236. The court therefore found no basis in the statute to conclude that,

> "when [the statute] speaks of attorney fees to the 'prevailing party' as a part of the 'costs' in a lien foreclosure proceeding, it means to include more than the statutory procedures themselves, or that it means to invite foreclosure suits as a step toward obtaining attorney fees for an arbitration under a contract that does not provide for such fees[.]"

*Id.* at 236-37.

That conclusion, however, did not end the court's inquiry. The court further considered the terms of the parties' contract, which contained a provision that the rights and remedies in the contract were

> "in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law."

*Id.* at 238. The court concluded that the parties, by including that clause in the contract, effectively had agreed that their resort to arbitration should not alter the range of rights and remedies otherwise available to them, such as the rights and remedies available under the lien foreclosure statutes. Thus, the court held that the *contract between the parties* preserved the parties' right in a lien foreclosure action to recoup reasonable fees for work done in arbitration as if all issues had been litigated in the foreclosure proceeding rather than in the arbitration. *Id.* at 238-39.

Hallmark argues that *Harris* is no longer controlling because the statute has been amended to provide for an award of attorney fees "at trial and on appeal." Or Laws 1981, ch 897, §19. In Hallmark's view, that change narrowed the statute so that fees cannot include work done in arbitration. The problem with Hallmark's argument is that it misunderstands the basis for the Supreme Court's opinion in *Harris*. As we have described, insofar as the lien statutes were concerned, the court concluded that the legislature contemplated an award of fees only for work done in the statutory lien procedures themselves. *Harris*, 292 Or at 236. The amendment that Hallmark relies on does not change that conclusion. The court's conclusion in *Harris* that the plaintiff was entitled to an award of attorney fees for work done in arbitration was based not on the statute, but on the legal force and effect of the reservation of rights clause in the parties' contract. In this case, the parties' contract contains an identical clause, a fact that Hallmark does not dispute. The decision in *Harris* is therefore directly on point and is controlling. Thus, the trial court did not err in including as part of the attorney fee award a reasonable amount for work done in the arbitration proceeding that otherwise would have been part of the lien foreclosure action.

The attorney fee award nevertheless must be reversed, as Hallmark urges in its fourth assignment of error. Because we are reversing the award of summary judgment to Westwood pursuant to Hallmark's second assignment of error, Westwood is no longer the prevailing party.

Reversed and remanded.