Argued and submitted May 18, 2016; judgment on claim for malicious
prosecution reversed and remanded for entry of judgment in favor of defendant,
otherwise affirmed June 28, 2017

Steven D. MERRILL,
*Plaintiff-Respondent,*

*v.*

Anthony R. GASCON,
*Defendant-Appellant.*

Clackamas County Circuit Court
CV13020419; A158790

398 P3d 954

Margaret H. Leek Leiberan argued the cause for appel-
lant. With her on the briefs was Jensen & Leiberan.

Mark L. Busch argued the cause and filed the brief for
respondent.

Before Sercombe, Presiding Judge, and Tookey, Judge,
and DeHoog, Judge.

## TOOKEY, J.

Defendant appeals from a judgment entered against him on claims for malicious prosecution and wrongful initiation of civil proceedings. On appeal, he assigns error to the trial court's denial of his motions for directed verdict on those claims. We conclude that the trial court erred in denying defendant's motion for directed verdict on the malicious-prosecution claim, but did not err in denying defendant's motion for directed verdict on the wrongful-initiation claim. Accordingly, we reverse the malicious-prosecution claim, remand for entry of a judgment in defendant's favor on that claim, and otherwise affirm.

"Because this case comes to us after a trial at which the jury found in plaintiff's favor, we view all the evidence, and the inferences that reasonably may be drawn from it, in the light most favorable to plaintiff." *Greist v. Phillips*, 322 Or 281, 285, 906 P2d 789 (1995).

Plaintiff and defendant are neighbors. They live in a rural, hilly area covered with heavy vegetation. Plaintiff and another neighbor, Choppala, have a 20-foot-wide access easement across the eastern border of defendant's property that allows plaintiff and Choppala to gain access to their property from a public road. In 2005, defendant sued plaintiff and Choppala to prevent them from using the established, paved access point from the public road to the easement because that access was outside of the recorded easement area. Defendant obtained a judgment that required plaintiff and Choppala to build a new road that was within the easement within 120 days of the judgment becoming final, and thereafter enjoined them from using defendant's property except for the easement. Plaintiff appealed the part of that judgment relating to attorney fees, which was affirmed without opinion. *See Gascon v. Merrill*, 228 Or App 368, 208 P3d 1057, *rev den*, 346 Or 589 (2009). The final judgment issued in January 2010. After the court-ordered 120 days to build the new road elapsed, in May 2010, defendant locked a gate across the access point on his property, preventing plaintiff and Choppala from using the access point. At that time, plaintiff and Choppala had not yet built a new access point.

At the other end of the easement, where it neared the northern border of defendant's property, the established roadway that plaintiff used for access was partly inside the easement and partly outside of it. Not long after locking the gate across the access point, defendant also built a 15-foot chain-link fence across the established roadway at the other end of the easement. Approximately five feet of the fence was on the easement and the remaining 10 feet was on defendant's property west of the easement. Plaintiff, through his attorneys, requested that defendant remove the fence because it blocked the only access, including emergency access, to plaintiff's property. In response, defendant refused to remove the fence and provided a copy of a survey to plaintiff's attorney that showed the established roadway was largely not within the easement.

In November 2010, about four months after defendant erected the fence, plaintiff took the fence down by sawing off the three fence posts at their base and laying the fence down in the easement. Plaintiff testified that he believed that the entire fence was in the easement when he took it down because it covered the asphalt and because he had not seen a survey that showed otherwise. Plaintiff also testified that he believed defendant had moved a survey pin and put down paint lines to make it only look like the fence was not on the easement, even though at least part of it was. Defendant testified that he had measured from his property line to make sure that the entire fence was outside of the easement when he put it up.

Defendant called the police. Defendant told the police officer that the fence was entirely outside the easement and insisted that the officer press charges. In his conversation with the officer, defendant showed him surveillance footage from one of his cameras showing Choppala stepping a few feet onto his property, his survey of the easement, and the judgment from the easement case. The police report stated that, if the survey marker defendant showed the officer was accurate, then the fence was not in the easement but that "[i]t was hard to tell, however, where the eastern most border was, and if it was inside the easement." After speaking to plaintiff, who admitted to cutting down the fence, the officer

issued plaintiff a citation for second-degree criminal mischief. Three days later, plaintiff also received a citation for second-degree criminal trespass for the same conduct. The charges against plaintiff were later dismissed on request of the district attorney.

In December 2010, after being contacted by a victim's assistance program, defendant petitioned for a civil stalking protective order (SPO) against plaintiff. In the SPO petition, defendant relied on the incident with the fence, as well as two other incidents, as the basis for obtaining an SPO against plaintiff. The first other incident occurred in November 2009, when plaintiff was standing with an engineer in the easement discussing a new access point. While they were there, defendant drove up the easement road towards them, causing them to move out of the way. As plaintiff moved out of the way, he slapped defendant's truck and told defendant to stop. Defendant then got out of his truck, and he and plaintiff yelled at each other. In the SPO petition, defendant claimed that he was just trying to back up his truck when plaintiff ran up and slapped his truck twice, threatened defendant, and tried to start a physical altercation with defendant. Defendant went inside and called the police using the non-emergency number.

The second other incident that served as the basis for defendant's SPO petition against plaintiff occurred in May 2010, the day that defendant locked the gate across the access from the public road. After defendant locked the gate, plaintiff and Choppala went to defendant's house to talk to him because defendant would not open the gate for Choppala's wife so that she could get her car out. Plaintiff walked down the easement with a two-by-two piece of lumber that he used as a walking stick. When defendant saw plaintiff, defendant started yelling to someone he was talking to on the phone that plaintiff had a "club." The police were called, and, after the police arrived, plaintiff and Choppala left because defendant would not open the gate to let out Choppala's car. Later, with police assistance, the Choppalas were able to move their cars off their property. In his SPO petition, defendant claimed that plaintiff had had a club, had threatened "to bash my head in," and advanced toward defendant.

Based on defendant's SPO petition and his *ex parte* testimony, the court issued a temporary SPO, at which point plaintiff was notified of the proceedings. Plaintiff requested a hearing.

At the permanent SPO hearing, in addition to presenting evidence of his version of events, and contending that defendant was not truthful in his SPO petition, plaintiff introduced evidence that defendant had a concealed-carry permit and kept a handgun on his person 90 percent of the time, had other weapons including an AR-15 rifle, was military trained in hand-to-hand combat, and had video surveillance on his property, including a camera on the easement road. At the end of the hearing, after the SPO court issued its oral ruling denying defendant's requested SPO, the court requested that plaintiff prepare the final judgment. Plaintiff's attorney prepared the proposed judgment, submitted it to the court, and served it on defendant's attorney, who then had an opportunity to object to it. The SPO court entered the permanent SPO judgment, after making handwritten deletions to the proposed judgment submitted by plaintiff.

In the SPO judgment, the SPO court found that (1) the fence-cutting incident was not a threat to defendant's safety and was insufficient to cause defendant alarm and (2) the truck-slapping incident was not a threat to defendant's safety and it was not objectively reasonable for defendant to be alarmed or coerced by that conduct. The court also specifically found that defendant's testimony was not credible. The court did not address the "club"-wielding incident. Based on its findings on the other two incidents, the court concluded that defendant failed to prove two qualifying contacts necessary for an SPO and that "[t]here was no objective reasonable basis for [defendant] to have asserted the claim for a stalking protective order."[1] The SPO court

---

[1] The SPO judgment, which was admitted as an exhibit in this case, included the following findings of fact and conclusions of law:

"FINDINGS OF FACT

"1. [Plaintiff] on November 19, 2010, cutting down a chain link fence, and leaving the fence on an easement road, some 400 feet or more from [defendant's] residence objectively was not a threat to [defendant's] personal safety, and was insufficient to cause [defendant] alarm.

vacated the temporary SPO and dismissed defendant's SPO petition with prejudice.

Plaintiff then filed this action against defendant, asserting a claim for malicious prosecution for the criminal charges brought against plaintiff, and a claim for wrongful initiation of civil proceedings for the SPO proceedings brought against plaintiff.

At the close of plaintiff's case, defendant made multiple motions for directed verdict. With respect to plaintiff's malicious-prosecution claim, and as relevant on appeal, defendant argued that he had probable cause to institute the criminal complaint against plaintiff because he reasonably believed that the fence was on his property and not in the easement. The parties agreed that whether defendant had probable cause was an issue for the trial court to decide. With respect to that question, the trial court concluded that defendant had "probable cause for the criminal proceeding with regard to the criminal mischief." However, the court also concluded that defendant did not have probable cause for the criminal-trespass charge. As a result, the trial court denied

"2. [Plaintiff] on November 23, 2009, slapping on [defendant's] vehicle as [defendant] was driving and pulled up within inches of [plaintiff], before stopping his vehicle, [plaintiff's] actions could not have constituted a threat to [defendant's] personal safety and it was not objectively reasonable for [defendant] to have been alarmed or coerced by the contact.

"3. [Defendant's] allegation of May 22, 2010, that [plaintiff] acted in concert with *** Choppala to place [defendant] in fear of his personal safety, does not need to be addressed as there is not satisfactory evidence, by a preponderance of the evidence that there were two unwanted contacts that existed from an objective basis that could have either frightened or coerced the [defendant].

"4. [Plaintiff] had no other contact with [defendant] within the immediate two years prior to the filing of the petition herein on December 6, 2010.

"5. There was no evidence that [plaintiff] and [Choppala] conspired in any way to alarm or coerce [defendant] or make him apprehensive of his or his immediate family's personal safety.

"6. [Defendant's] testimony was not credible.

"CONCLUSIONS OF LAW

"1. [Defendant] failed to prove two of the qualifying contacts required to support the continuation of the temporary stalking protective order, therefore the [defendant] failed to meet his burden.

"2. There was no objective reasonable basis for [defendant] to have asserted the claim for a stalking protective order."

defendant's motion for directed verdict on the malicious-prosecution claim.

Defendant also moved for a directed verdict on plaintiff's claim for wrongful initiation of a civil proceeding based on his having probable cause to seek an SPO against plaintiff. The trial court first noted, in response to defendant's arguments, that defendant was aware of the requirements to obtain an SPO because they are set out in the petition that he had to fill out to seek an SPO. The trial court then concluded that it was bound, as a matter of issue preclusion, by the conclusion of the SPO court that "[t]here was no objective reasonable basis for [defendant] to have asserted the claim for stalking protective order." The court reached that conclusion based on the SPO court having heard all the evidence on the SPO, which was not retried before the trial court. The trial court concluded that "[the SPO court] made a retrospective conclusion about the objectivity of the charge at the time it was sought, and I believe that does bind me. So I am finding that there was no probable cause to initiate the stalking protective proceedings." Consequently, the court denied defendant's motion for directed verdict on the wrongful-initiation claim.

Ultimately, the matter was submitted to the jury on a special verdict. The jury found for plaintiff on both of his claims. For the malicious-prosecution claim, the jury awarded plaintiff $5,500 in economic damages, $50,000 in noneconomic damages, and $25,000 in punitive damages. For the wrongful initiation of civil proceedings claim, the jury awarded plaintiff $28,203.71 in economic damages— which the parties agreed was subject to a set-off of $15,000— $150,000 in noneconomic damages, and $75,000 in punitive damages.

Defendant appeals from the resulting judgment, assigning error to the trial court's denial of his motions for directed verdict. In reviewing the trial court's denial of defendant's motions for a directed verdict, we will not set aside the jury's verdict "unless we can affirmatively say that there is no evidence from which the jury could have found the facts necessary to establish the elements of plaintiff's cause of action." *Brown v. J. C. Penney Co.*, 297 Or 695, 705,

688 P2d 811 (1984). In conducting that review, we consider the evidence, and the inferences that may be drawn from that evidence, in the light most favorable to plaintiff, the nonmoving party. *Najjar v. Safeway, Inc.*, 203 Or App 486, 489-90, 125 P3d 807 (2005). We first address the trial court's denial of defendant's directed verdict motion on the malicious-prosecution claim.

## MALICIOUS PROSECUTION

To recover for malicious prosecution, a plaintiff must prove that

> "(1) the institution or continuation of the original criminal proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceeding; and (6) injury or damage because of the prosecution."

*Rose (Betty) v. Whitbeck*, 277 Or 791, 795, 562 P2d 188, *adh'd to as modified on recons*, 278 Or 463, 564 P2d 671 (1977). A person has probable cause to initiate criminal proceedings against another if that person "'reasonably believes that the person accused has acted or failed to act in a particular manner,'" and "'correctly believes that such acts or omissions constitute at common law or under an existing statute the offense charged against the accused.'" *Varner v. Hoffer*, 267 Or 175, 179, 515 P2d 920 (1973) (quoting *Restatement (First) of Torts* § 662, (1938)). "[P]robable cause comprehends the existence of such facts and circumstances that would excite in a reasonable mind the honest belief that the person is guilty of the crime charged[.]" *Shoemaker v. Selnes et al*, 220 Or 573, 579, 349 P2d 473 (1960) (internal quotation marks omitted). Thus defendant "must have [had] both a reasonable and a subjective belief in the guilt of" plaintiff. *Napier v. Sheridan*, 24 Or App 761, 769, 547 P2d 1399 (1976).

Proof that a defendant had probable cause is a complete defense to a claim for malicious prosecution. *Mathre v. Multnomah County*, 35 Or App 75, 79, 581 P2d 88 (1978). "Whether defendant had probable cause is a question of law for the court to decide if the facts and the inferences from the facts are undisputed." *Varner*, 267 Or at 178-79. "If the facts or inferences are in dispute the jury must decide the

facts and the court must instruct the jury what facts constitute probable cause." *Id.* at 179. Thus, we review the trial court's probable-cause determination for legal error.

In this case, the trial court concluded, as a matter of law, that defendant had probable cause for the criminal-mischief charge brought against plaintiff, but that defendant lacked probable cause for the criminal-trespass charge brought against plaintiff. The trial court's determination for the criminal-trespass charge was based on plaintiff not knowing precisely where the easement boundaries were and, "[s]o in terms of whether or not there was probable cause to believe that he either intentionally or recklessly entered on to property he had no lawful right to be on, I don't see that." The trial court also stated that no "reasonable person would think that a negligible, brief entry is criminal." On that basis, the trial court denied defendant's motion for directed verdict on plaintiff's malicious-prosecution claim.

On appeal, defendant challenges the trial court's probable-cause conclusion with respect to the criminal-trespass charge and, consequently, the trial court's denial of his directed-verdict motion. Based on the undisputed facts and inferences, we conclude that defendant did have probable cause to believe that plaintiff had criminally trespassed on his property and that the trial court erred when it denied defendant's directed-verdict motion on plaintiff's malicious-prosecution claim.[2]

Plaintiff was charged with second-degree criminal trespass. As relevant here, "[a] person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully *** in or upon premises" and does so with the culpable mental state of criminal negligence.[3]

_____

[2] Because we reverse on the basis that defendant had probable cause for criminal trespass, we do not address defendant's argument that he did not initiate the criminal trespass charge against plaintiff.

[3] The second-degree criminal trespass statute does not specify a culpable mental state. Consequently, a person commits the crime of second-degree criminal trespass if the person intentionally, knowingly, recklessly or with criminal negligence "enters or remains unlawfully *** in or upon premises," ORS 164.245. *See* ORS 161.115 ("[I]f a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence."); *see also State v. Lucero*, 265 Or App 328, 331 n 2, 335 P3d 1275, *rev den*, 356 Or 575

ORS 164.245. "Enter or remain unlawfully" is defined, as relevant here, as "[t]o enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the entrant is not otherwise licensed or privileged to do so." ORS 164.205(3)(a). The culpable mental state of criminal negligence means

> "a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such a nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

ORS 161.085(10).

The undisputed facts are that the 15-foot fence that plaintiff took down was only in the easement about five feet, and that the remainder was on defendant's property outside of the easement. Thus, plaintiff would have to have gone onto defendant's property outside the easement, where he was not licensed or privileged to be, to saw down at least one of the fence posts. Plaintiff knew that he was not licensed or privileged to be on defendant's property outside of the easement and that defendant disputed, based on a survey, that the fence was in the easement and refused to take the fence down. Defendant provided plaintiff's attorney with a survey that showed that that part of the roadway was largely not within the easement. Plaintiff testified only that, at the time that he cut the fence down, he believed that the entire fence was within the easement because the road had always been there and he had not seen a survey that showed otherwise. Based on those undisputed facts, we conclude, as a matter of law, that defendant did have probable cause to believe that plaintiff's acts constituted second-degree criminal trespass when he contacted the police. It was objectively reasonable for defendant to believe, at a minimum, that plaintiff was

---

(2014) ("'[A] person commits the crime of criminal trespass in the first degree if he "intentionally, knowingly, recklessly or with criminal negligence" "enters or remains unlawfully in a dwelling."'" (Quoting *State v. Fitch*, 23 Or App 487, 489-90, 543 P2d 20 (1975).)). For purposes of our analysis, we apply the minimum required culpable mental state, criminal negligence, to determine whether defendant had probable cause to initiate proceedings for criminal trespass.

unreasonable in failing to be aware that he was on defendant's property without license or privilege when plaintiff cut down the fence, and it was undisputed that defendant did subjectively so believe.

Plaintiff nonetheless argues that we should affirm the court's determination that defendant lacked probable cause based on plaintiff's assertion that defendant could not have reasonably believed that plaintiff did not have a right to be on the road. Plaintiff asserts that defendant had impliedly accepted the location of the established roadway at the north end of the easement because that part of the roadway was not part of the prior easement litigation. We reject plaintiff's argument: The judgment in the prior easement litigation between defendant and plaintiff explicitly restricted plaintiff from using defendant's property located outside of the 20-foot easement; plaintiff was aware when he cut down the fence that defendant was claiming that the fence was located outside of the easement based on a survey; and defendant had provided that survey to plaintiff's attorney. As set out above, based on the undisputed facts and inferences, defendant did have probable cause to believe plaintiff criminally trespassed when plaintiff cut down the fence. Accordingly, we also conclude that the trial court erred in denying defendant's motion for directed verdict on the malicious-prosecution claim.

## WRONGFUL INITIATION OF CIVIL PROCEEDINGS

We next address defendant's assignments of error pertaining to plaintiff's wrongful initiation of civil proceedings claim. To prevail on a claim for wrongful initiation of a civil proceeding, the plaintiff must show "(1) commencement and prosecution by the defendant of a judicial proceeding against the plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) absence of probable cause to prosecute the action; (4) existence of malice; and (5) damages." *SPS of Oregon, Inc. v. GDH, LLC*, 258 Or App 210, 218, 309 P3d 178 (2013). In the context of a wrongful-initiation claim, probable cause "means that the person initiating the civil action 'reasonable believes' that he or she has a good chance of prevailing—that is, he or she has an objectively reasonable, subjective belief that the claim has merit." *Id.*

As with the malicious-prosecution claim, the existence of probable cause is a complete affirmative defense to a wrongful-initiation claim, and it is a question of law for the court when the facts or inferences are undisputed. *Id.* However, if the facts or inferences are disputed, then the jury must decide the facts and the court must instruct the jury on what facts constitute probable cause. *Id.*

To obtain an SPO against a person, the petitioner must show, by a preponderance of the evidence, that

"(a)   The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b)   It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c)   The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

ORS 30.866(1); ORS 30.866 (7). "Repeated" contact means "two or more" qualifying contacts. ORS 163.730.

"Thus, to obtain an SPO, a petitioner must establish, at a minimum, that, on at least two occasions, the respondent contacted the petitioner while subjectively 'aware of a substantial and unjustifiable risk' that the contact was 'unwanted by the recipient, and then consciously and unreasonably disregard that risk.'" *Travis v. Strubel,* 238 Or App 254, 257, 242 P3d 690 (2010) (quoting *Delgado v. Souders,* 334 Or 122, 133, 46 P3d 729 (2002)). Additionally, each of the unwanted contacts, "individually, must give rise to subjective and objectively reasonable alarm or coercion." *Bachmann v. Maudlin,* 283 Or App 548, 549, 389 P3d 413 (2017) (internal quotation marks omitted). And, the repeated unwanted contacts, cumulatively, "must give rise to subjective apprehension regarding the petitioner's personal safety or the personal safety of a member of the petitioner's immediate family or household, and that apprehension must be objectively reasonable." *Id.* (internal quotations marks omitted).

Finally, if the unwanted contact involves speech, it is a qualifying contact only if it is a "threat," which "is a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999).

Consequently, at issue in the wrongful-initiation proceeding on the element of probable cause was whether defendant had an objectively reasonable, subjective belief that at least two of the three contacts with plaintiff each, individually, were unwanted contacts that caused him subjective and objectively reasonable alarm or coercion, and that the qualifying incidents, cumulatively, gave him subjective and objectively reasonable apprehension regarding his or his family's personal safety.

On the probable-cause issue, the trial court determined that defendant did not have probable cause after giving preclusive effect to the SPO court's conclusion that "[t]here was no objective reasonable basis for [defendant] to have asserted the claim for stalking protective order." As set out above, the trial court based its conclusion on the SPO court having been in the position to have heard all the evidence on the SPO and having made a retrospective conclusion that defendant did not have an objective, reasonable basis to seek an SPO at the time it was sought. Defendant contends that the trial court erred in giving that conclusion preclusive effect.

"The doctrine of issue preclusion operates to prevent the relitigation of issues that have been fully litigated in a prior proceeding between the same parties." *Johnson & Lechman-Su, P.C. v. Sternberg*, 272 Or App 243, 246, 355 P3d 187 (2015). "Issue preclusion applies to an issue of either fact or law." *Drews v. EBI Companies*, 310 Or 134, 140, 795 P2d 531 (1990). A prior decision of an issue of fact or law is conclusive in future proceedings if:

"1.   The issue in the two proceedings is identical.

"2.   The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

"3.   The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4.   The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5.   The prior proceeding was the type of proceeding to which this court will give preclusive effect."

*Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (citations omitted). To satisfy the "actually litigated" and "essential to a final decision requirement," "a prior court's resolution of an issue must either be apparent from the face of a judgment or order or, if not apparent from the face of a judgment or order, must have been necessary to the resolution of the prior adjudication." *Leach v. Scottsdale Indemnity Co.*, 261 Or App 234, 240, 323 P3d 337, *rev den*, 356 Or 400 (2014) (citing *Westwood Construction Co. v. Hallmark Inns*, 182 Or App 624, 635-36, 50 P3d 238, *rev den*, 335 Or 42 (2002) (discussing the requirements of ORS 43.160, "which had its genesis in the common-law principle of issue preclusion")).

Defendant argues only that the second element was not met—that is, that plaintiff did not show that the issue of probable cause "was actually litigated and was essential to a final decision on the merits" in the permanent SPO proceeding. To support that contention, defendant makes two separate arguments. First, defendant argues that plaintiff submitted into evidence only a small portion of the transcript from the permanent SPO proceeding, which does not demonstrate that the issue was actually litigated. Second, defendant argues that "a finding that there was probable cause to seek a stalking order is irrelevant to a decision on whether a permanent stalking order should be issued," because the issue whether a petitioner had probable cause to seek an SPO is decided *ex parte* at the temporary SPO stage and not at the permanent SPO stage. *See* ORS 30.866(2) ("At the time the petition is filed, the court, upon a finding of probable cause based on the allegations in the petition, shall enter a temporary court's stalking protective order * * *."). Because the SPO court's determination was irrelevant at the permanent SPO stage, defendant argues that it was not essential to a final decision and should not be given preclusive effect.

We reject both of defendant's arguments because the permanent SPO judgment, which was admitted into evidence, on its face sets out the SPO court's findings and resultant legal conclusion that "[t]here was no objective reasonable basis for [defendant] to have asserted the claim for stalking protective order." As explained in *Westwood Construction Co.*, 182 Or App at 635-36, because the face of the judgment expressly resolved the issue, the issue-preclusion criterion of "actually litigated" and "essential to a final decision on the merits in the prior proceeding" was satisfied.

In *Westwood Construction Co.*, the defendant argued that, in a construction lien foreclosure action, issue preclusion did not apply to an arbitrator's determination of the date on which substantial completion of construction occurred because the determination of that date was not necessary and essential to the arbitration proceeding on the construction contract. 182 Or App at 634-35. We rejected the defendant's argument because the face of the arbitration award expressly resolved that issue, which satisfied the criterion for issue preclusion. *Id.* at 636. We explained that

> "cases often refer to whether a previously resolved issue was essential or necessary to a prior adjudication as a means of ensuring, especially in the context of a general verdict or judgment, that the issue was actually litigated and determined in the prior proceeding. But the issue preclusion doctrine is not limited by that requirement. ORS 43.160, which had its genesis in the common-law principle of issue preclusion, provides:
>
>> 'That only is determined by a former judgment, decree or order *which appears upon its face to have been so determined or* which was actually and necessarily included therein or necessary thereto.'
>
> (Emphasis added.) By the statute's plain terms, when the face of a judgment or order in a prior proceeding demonstrates that a matter was actually determined, the determination is preclusive. The issue must have been 'necessarily' resolved by a prior adjudication only if the face of the prior judgment or order does not demonstrate that it was in fact resolved."

*Id.* at 635-36 (citation and footnotes omitted).

In this case, after the SPO court issued its oral ruling, it requested that plaintiff, who had prevailed, prepare the final judgment. Plaintiff's attorney prepared the proposed judgment, setting out several findings and resultant conclusions of law, submitted the proposed judgment to the court, and served it on defendant's attorney, who then had an opportunity to object to it. The SPO court entered the permanent SPO judgment, after making handwritten deletions to the proposed judgment submitted by plaintiff. In doing so, the SPO court specifically left intact in the judgment the legal conclusion that "[t]here was no objective reasonable basis for [defendant] to have asserted the claim for stalking protective order." Because the face of the SPO judgment established that the SPO court actually determined the issue, the "was actually litigated and was essential to a final decision on the merits in the prior proceeding" criterion for issue preclusion was satisfied. Defendant does not argue that any of the other criteria for issue preclusion are not satisfied in this case. Thus, the trial court correctly gave preclusive effect to the SPO court's determination that defendant had "no objective reasonable basis" to have asserted the SPO claim.

Finally, we address defendant's assignment of error to the trial court's denial of defendant's motion for a directed verdict on plaintiff's wrongful-initiation claim. We address briefly this assignment of error because defendant raises one argument that could negate the trial court's conclusion that he lacked probable cause, even after giving preclusive effect to the SPO court's conclusion about defendant's objective reasonable belief. In the context of a wrongful-initiation claim, reliance on the advice of counsel is an affirmative defense to wrongful initiation. "If the defendant establishes that the defendant sought and relied upon the advice of counsel in good faith, after a full and frank disclosure of all pertinent facts, to initiate the disputed action, the defense succeeds, and the existence of probable cause is established as a matter of law." *SPS of Oregon, Inc.*, 258 Or App at 218-19.

Defendant argues on appeal that he reasonably believed that he had a basis to seek an SPO because he relied on the advice of a person working with the victim's

assistance program. We reject that argument. Defendant does not claim that he sought or relied on the advice of an attorney, and, further, defendant specifically abandoned any such defense in the trial court in response to plaintiff's motion *in limine* to exclude as a defense that defendant relied on advice from a victim's assistance program. For defendant to have had probable cause, he must have had an objectively reasonable belief that his SPO claim against plaintiff had merit, and he cannot meet that standard by stating that he relied on "advice" from a victim's assistance program.

Accordingly, the trial court did not err in concluding that defendant did not have probable cause to bring the SPO petition and did not err in denying defendant's motion for directed verdict on the wrongful-initiation claim.

Judgment on claim for malicious prosecution reversed and remanded for entry of judgment in favor of defendant; otherwise affirmed.