Argued and submitted April 15, affirmed October 20, 2010, petition for review denied February 17, 2011 (349 Or 654)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUDE SOMERSET HARDESTY,
*Defendant-Appellant.*

Clackamas County Circuit Court
08T02629, 08T02630
A139152 (Control); A139153

241 P3d 741

Rankin Johnson IV argued the cause for appellant. With him on the opening brief were Law Office of Rankin Johnson IV, LLC; and Brian S. Ruff and Sam Hochberg and Associates. On the reply brief was Rankin Johnson IV.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

■ In these consolidated cases, defendant appeals the trial court's judgments of conviction for two traffic violations for failure to wear a motorcycle helmet. ORS 814.269(1).[1] The issue before the trial court was whether the helmet that defendant was wearing was a "motorcycle helmet," as defined by ORS 801.366.[2] Defendant argued below that ORS 801.366 requires that the helmet comply with federal design standards and that his helmet did so. On appeal, defendant contends that ORS 801.366 does not require the helmet to comply with federal design standards, but that the helmet otherwise meets the statutory definition of "motorcycle helmet." Because that contention is inconsistent with defendant's argument to the trial court, it is insufficiently preserved. Accordingly, we affirm.

The relevant facts are not disputed. A Clackamas County deputy sheriff observed defendant driving a motorcycle while wearing what the deputy described as a "samurai helmet"—a helmet with spike projections around its front and a metal skirt around its base. The deputy pulled over defendant and cited him for failure to wear a motorcycle helmet under ORS 814.269(1). After citing him, the deputy requested that defendant put on a conventional helmet, which defendant was carrying on the back of his motorcycle. Defendant drove away without changing helmets. Moments later, the deputy stopped defendant a second time and issued another citation for the same violation. Defendant pleaded not guilty to both citations and requested a court trial, at which he represented himself.

At trial, the deputy asserted that ORS 801.366 "gives the definition of a motorcycle helmet in regards to the violation that I wrote for failure [to] wear the helmet, ORS

---

[1] ORS 814.269(1) provides, "A person commits the offense of failure of a motorcycle operator to wear a motorcycle helmet if the person operates a motorcycle and is not wearing a motorcycle helmet."

[2] ORS 801.366 provides, " 'Motorcycle helmet' means a protective covering for the head consisting of a hard outer shell, padding adjacent to and inside the outer shell and a chin-strap type retention system with a sticker indicating that the motorcycle helmet meets standards established by the United States Department of Transportation."

814.269. And basically it states that it adopts the Federal Motor Vehicle Safety Standard Number 218." The deputy argued that defendant's helmet violated the federal standards because the U.S. Department of Transportation (DOT) sticker was improperly placed and was not affixed by a manufacturer, and the spikes on the front of the helmet protruded too far. The deputy also stated that the chin strap was "suspect" in that it was "basically a rope tied in a knot," but did not explicitly argue that it violated any standards. Thus, the deputy argued and presented evidence to the trial court that defendant violated ORS 814.269(1) because the helmet that defendant was wearing did not meet the definition of "motorcycle helmet" under ORS 801.366 in that it did not comply with the federal standards.

In response, defendant asserted that he was licensed to manufacture and sell helmets in Oregon and that the helmet was in fact manufactured to the federal specifications. He also explained that the chin strap was a "shock absorption cord, which is stronger than a standard helmet's neck strap." Rather than address the other alleged defects individually, defendant stated, in sum, "That's my whole defense, is that it is a legal helmet." The trial judge, without expounding the reasons for his judgment, found defendant guilty and imposed a $97 fine on each violation.

On appeal, defendant argues for the first time that ORS 801.366 does not incorporate the federal standards for motorcycle helmets. Instead, he maintains that the statute merely requires that a helmet display a sticker stating, even if falsely, that the helmet is DOT compliant. Defendant concludes that, in the absence of a requirement that a helmet meet the federal standards, there was insufficient evidence on which to conclude that he violated the statute. The state contends that defendant did not preserve his assignment of error and that, in any event, the statute was intended to, and does, demand that a helmet conform to DOT standards in order to fit within the definition of a "motorcycle helmet."

We need not determine the meaning of "motorcycle helmet" under ORS 801.366 in order to decide this appeal. Defendant does not argue before this court that ORS 801.366 requires that a helmet meet the DOT standards and that his

helmet did so. Defendant advanced that meaning of ORS 801.366 before the trial court, and, apparently, the trial court concluded that the helmet failed to comply with the federal standards.[3]

Instead, defendant makes an argument on appeal that ORS 801.366 means something completely different— that the statute does *not* require compliance with DOT standards and that his helmet otherwise meets the requirements of the statutory definition. That statutory construction argument was not preserved and cannot aid defendant at this point.

■■■ To preserve an issue at trial, a party "must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). The policy reasons underlying the rule of preservation are procedural fairness to the trial court and opposing parties, development of a full record to facilitate review, and promotion of judicial efficiency. *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008). "Ultimately, the preservation rule is a practical one, and close calls * * * inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served." *State v. Parkins*, 346 Or 333, 340-41, 211 P3d 262 (2009).

Here, defendant maintains that his statement at trial that his helmet was "legal" sufficiently preserved the claim of error that he now asserts. In essence, he claims that that generic argument adequately preserved the more specific argument that his helmet was legal because ORS 801.366 does not require compliance with DOT standards. The state counters that, when defendant's statement is read

---

[3] Although the deputy stated at trial that defendant's chin strap was "suspect," and it is clear that ORS 801.366 contains its own chin strap requirement independent of the federal standards, the deputy did not explicitly argue that the chin strap violated the statute or explain how it was noncompliant. Nor does the state contend on appeal that defendant's chin strap violated the statute. Therefore, as we view the record, the only basis for the trial court's judgment was noncompliance with the DOT standards.

in context, it is an argument that his helmet was legal because it *complied* with the federal standards, not because it *need not comply* with the federal standards. In so arguing, the state contends, defendant in effect "invited the trial court to draw the conclusion that he now assigns as error." We agree with the state.

To be sure, the meaning of ORS 801.366 was before the trial court in a very general sense—it was the basis of defendant's conviction under ORS 814.269. And it is true that, when an issue of statutory construction is presented to a trial court and the court's interpretation of the law is at issue on appeal, we are "responsible for identifying the correct interpretation, whether or not asserted by the parties." *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997). But here, no issue of statutory construction was presented to the trial court. Both parties proceeded under a common understanding of the statutory requirements, an understanding that may or may not have been correct. Whether correct or not, defendant cannot now complain that the trial court erred because it failed to view the statute differently than presented by the parties. *See Ingram v. Allen*, 273 Or 890, 893, 544 P2d 167 (1975) (party's acquiescence invited the error and party cannot complain on appeal); *Parkins*, 346 Or at 359 (Kistler, J., dissenting) ("This court has long recognized that, when a party 'indicates' to the trial court that an issue or ruling is acceptable, that party may not challenge the ruling on appeal. *Clay/Luttrell v. Pay Less Drug Stores*, 276 Or 673, 676-77, 556 P2d 125 (1976)."); *State v. Cervantes*, 232 Or App 567, 577, 223 P3d 425 (2009) ("When both parties urge a trial court to commit legal error in making a ruling, neither party is in a position to benefit from that invited error and obtain a reversal of the ruling on appeal."). Therefore, we conclude that defendant failed to preserve his claim of error.

Affirmed.