Argued and submitted November 2, 2012, in A144998 and A145972, affirmed October 9, 2013

Thomas J. MINIHAN,
*Plaintiff-Respondent,*
*v.*

Thomas STIGLICH,
*Defendant-Appellant.*

Thomas J. MINIHAN,
*Plaintiff-Appellant,*
*v.*

Thomas STIGLICH,
*Defendant-Respondent.*

Clackamas County Circuit Court
CV08090475; A144998 (Control), A145972

311 P3d 922

R. Daniel Lindahl argued the cause for Thomas Stiglich. With him on the briefs were Lindahl Law Firm, PC, and Andrew M. Cole, and Cole Tait, PC.

Michael B. Merchant argued the cause for Thomas J. Minihan. With him on the briefs were Margaret E. Schroeder and Black Helterline LLP.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant Stiglich and plaintiff Minihan are neighbors in a residential area located next to the Willamette River. Plaintiff, along with several dozen other homeowners not including defendant, owns an undivided interest in a narrow lot that provides access to the river. The southern border of plaintiff's access lot runs along the northern border of defendant's property. After defendant erected a fence on the access lot and engaged in other activities that interfered with plaintiff's use of the lot, plaintiff sued defendant. After a bench trial, the court awarded plaintiff $10,000 in compensatory damages and $40,000 in punitive damages on plaintiff's claim of intentional trespass and subsequently granted plaintiff summary judgment on plaintiff's quiet title claim. In A144998, defendant challenges the damages awards as well as the order granting summary judgment. In A145972, plaintiff assigns error to the trial court's denial of his motion for attorney fees under ORS 20.105(1), which allows a prevailing civil litigant to obtain fees from an opponent who had no objectively reasonable basis for asserting a defense to the claim. We affirm.

## I. FACTS

A. *The Boundary Dispute*

We begin with the background of the dispute leading to the compensatory and punitive damages awards on plaintiff's trespass claim. We view the record in the light most favorable to plaintiff, who prevailed below. *Lunda v. Matthews*, 46 Or App 701, 703, 613 P2d 63 (1980) ("[In] an appeal from a judgment in favor of plaintiffs, private landowners, granting damages and injunctive relief in an action for trespass * * * [t]he evidence [is] viewed in the light most favorable to plaintiffs[.]").

The access lot, Lot 16, is a 15-foot-wide strip of land running west to east along the northern border of defendant's lot, Lot 10, from a neighborhood street to the Willamette River. Lot 16 is jointly owned by plaintiff and all of the homeowners owning property in the River Park subdivision of West Linn, and the lot provides them with access to the river and an adjoining stretch of beach. Plaintiff has been

an owner of Lot 16 since 1987. Plaintiff purchased his home, in part, because it was accompanied by the deeded interest in Lot 16. Before the conflict that led to this litigation, plaintiff regularly used Lot 16 to access the river and its beach without interference to engage in various recreational activities, such as walking his dogs, enjoying the open air with his wife, and viewing the local fireworks display each Independence Day with family members whom he would invite to join him for the occasion.

Defendant is the sole owner of Lot 10 and resides in a home on that property. Defendant purchased Lot 10 from the previous owner, Bates, in 2001. Several years before selling Lot 10 to defendant, Bates and the owners of Lot 16, including plaintiff, had a disagreement over the boundary line. After arranging for a survey to determine the boundary line, Bates conceded that the line lay where plaintiff had asserted it was located and then removed personal property—a metal shed and a large winch system—that he had placed on Lot 16.

Defendant began encroaching on Lot 16 shortly after he purchased Lot 10, building a grape trellis and dog run on the access lot. Plaintiff notified defendant that the trellis and dog run were on Lot 16. Defendant disagreed, asserting that the boundary line lay further north. For several years thereafter, defendant continued to dispute the location of the boundary line and frequently accused plaintiff of trespassing when plaintiff was utilizing Lot 16. Defendant began to verbally harass plaintiff when plaintiff would use the access lot.

The conflict escalated on July 4, 2006, when plaintiff and his wife set out to go to the river via Lot 16 and discovered that defendant had strung a rope between some trees directly across the front of the access lot and posted a "No Trespassing" sign. Defendant had placed the obstruction there that day in order to prevent plaintiff and his invitees from using Lot 16 to access the river. When plaintiff and his wife walked past the obstruction and continued on Lot 16 toward the river, defendant came out from his home and stood in front of them to block them, accused them of trespassing, began cursing at them, and insisted that he

would not permit plaintiff or plaintiff's invitees to use Lot 16 to access the river that evening. As a result, plaintiff cancelled his plans to walk down to the beach that night with visiting family to observe fireworks.

Plaintiff's neighbor and co-owner of Lot 16, Hurd, subsequently commissioned an engineer to locate and map the monuments identifying the boundary line between the access lot and Lot 10. The engineer located the boundary monuments while defendant was present. Those monuments demonstrated that the property line was located where plaintiff had previously indicated. Defendant nevertheless refused to accept the results and continued to contend that his property extended beyond the boundary line established by multiple surveys.

Shortly thereafter, in November 2006, defendant requested that the county perform a survey of the property. The county agreed and hired Compass Engineering to establish the boundary line. Although defendant was aware that previous surveys of Lot 10 were available at the county surveyor's office, he never attempted to review them.

While waiting for the results from the survey that he had requested, defendant continued to interfere with plaintiff's use and enjoyment of Lot 16. Two significant events occurred during the summer of 2007. On June 27, plaintiff and his wife were sitting at the beach on Lot 16 when defendant approached them, accused them of trespassing, and then called the police. Defendant's sons and several other individuals, who were drinking alcohol, also approached plaintiff and his wife, surrounding them, until the police arrived. Although plaintiff was on his own property, he volunteered to relocate further up the beach to placate defendant. After the police left, however, defendant continued yelling at plaintiff, and plaintiff elected to return home rather than endure further harassment from defendant.

Several days later, on July 3, defendant erected a chain-link fence on Lot 16. The fence was located wholly on Lot 16 and ran diagonally across Lot 16 from the southwest corner to the northeast corner. Plaintiff could not use the access lot to reach the river the following day, the July 4

holiday. Because of the fence, plaintiff's use and enjoyment of the property was "[p]retty much eliminated."

Compass completed its survey of Lot 16 the following month, August 2007, and submitted it to the county for review and approval. The survey confirmed that the boundary line was located where the earlier surveys had established it, *i.e.*, where plaintiff had long maintained that it lay. The survey specifically concluded that defendant's fence was wholly located on plaintiff's property. Defendant refused to accept that the survey was accurate and did not remove the fence. Defendant continued to maintain that plaintiff was, in fact, trespassing on his property. The county accepted the survey and filed it in April 2008.

Plaintiff and defendant retained counsel, and, in July 2008, plaintiff sent several letters to defendant citing the survey results and demanding that defendant remove the trespassing fence. Defendant responded by asserting— without offering any legal or factual basis for his position— that he owned the disputed portion of Lot 16.

B. *The Continuing Dispute and the Trial on Plaintiff's Claims for Trespass and Ejectment*

Plaintiff commenced this lawsuit in September 2008. Plaintiff's complaint stated claims for, *inter alia*, trespass and ejectment, alleging that, without legal basis or justification, defendant had wrongfully claimed ownership of part of Lot 16, wrongfully possessed Lot 16 by erecting the fence with knowledge that such conduct was trespassory, and intentionally "interfere[d] with [P]laintiff's use of Lot 16 by harassing and threatening Plaintiff, his co-owners, guests and invitees when those persons were using Lot 16." Plaintiff further alleged that he had "been damaged by [his] inability to access the Willamette River and enjoy the benefits of ownership of Lot 16." Plaintiff requested "damages for the loss of use and quiet enjoyment of Lot 16 in an amount not to exceed $10,000[.]" The complaint, as amended, also requested an award of $75,000 in punitive damages on the theory that defendant's conduct was the type of conduct that such damages are intended to deter. In addition to damages for trespass, plaintiff sought declaratory and injunctive relief

ordering defendant to remove all encroachments onto Lot 16 and an award of attorney fees pursuant to ORS 20.105.

Shortly after plaintiff filed his complaint, defendant initiated construction to expand his driveway up to the fence and onto Lot 16. On October 23, the trial court issued a temporary restraining order to prevent defendant from further construction on Lot 16. The court subsequently entered a preliminary injunction enjoining the construction and barring defendant from trespassing on Lot 16 as identified in the Compass survey and the 2006 monument survey that plaintiff's neighbor commissioned.

On October 14, 2008, less than a week after plaintiff had served defendant with the complaint, defendant commissioned a new surveyor, Chase Jones, to determine where the fence was located in relation to the boundary line. Chase Jones informed defendant on or about November 5 that the fence was located on Lot 16.

Defendant's answer, as ultimately amended, admitted that the fence "was substantially located on Lot 16." Defendant, however, denied many of plaintiff's allegations and asserted several affirmative defenses, including failure to mitigate damages, ownership, and good faith, and, in regards to plaintiff's quiet title claim, failure to join necessary and indispensable parties. Defendant also asserted several counterclaims.

Defendant finally removed the fence in March 2009—approximately 20 months after first installing it. Defendant also removed the grape trellis and the dog run.

Before trial, the presiding judge bifurcated resolution of the claims, deferring action on the quiet title claim. The case proceeded to a bench trial on the trespass and ejectment claims in January 2010. On the first day of trial, in response to a series of pretrial motions, the trial court, "for the purposes of this proceeding," struck defendant's affirmative defense that plaintiff had failed to join all necessary parties to the quiet title action. The court similarly denied as moot a motion by defendant to dismiss the quiet title claim on the ground that not all necessary parties had been added to the case.

At trial, plaintiff offered evidence that, over the course of several years, defendant had intentionally placed several physical barriers on Lot 16 to interfere with plaintiff's use and enjoyment of the lot; that defendant had done so well after he knew that he was trespassing; that defendant had harassed, threatened, and physically intimidated plaintiff and his wife; and that defendant's conduct had in fact interfered with plaintiff's use and enjoyment of Lot 16.

For his part, defendant asserted that he had a reasonable and good faith belief that the boundary line lay farther north than plaintiff contended and that, therefore, the fence and other encroachments were located on his lot, Lot 10. For example, defendant disclaimed knowledge of the resolution of the dispute between Bates and the owners of Lot 16 over the boundary line. According to defendant, he reasonably assumed that the portion of Lot 16 that Bates utilized and maintained was, in fact, part of his lot. He also claimed that Kliewer, a county employee working at the pump station located to the north of Lot 16, confirmed his understanding of the boundary line and that, before he erected the fence on Lot 16, he had hired an unknown individual from a survey firm to confirm that its placement would be on his lot. Defendant additionally argued that all of the surveys prior to the one he commissioned from Chase Jones were flawed in some way and that discrepancies between those surveys justified his opposition to plaintiff's claim as to the boundary line.

Before the close of evidence, plaintiff withdrew his claim for ejectment. Plaintiff requested, however, that the preliminary injunction previously issued be made permanent. In his closing argument, defendant conceded that the facts justified awarding damages to plaintiff but argued that the evidence was not sufficient to support the requested amount of $10,000 in compensatory damages.

The trial court orally announced its decision following the close of evidence. As to the trespass claim, the court awarded plaintiff $10,000 in compensatory damages and $40,000 in punitive damages. The court also made permanent the preliminary injunction barring defendant from trespassing on Lot 16. The court explained:

"[Defendant] embarked on a course of conduct here, which causes me to award damages for the trespass in the amount of the prayer of $10,000. T[his] * * * was an interference with the plaintiff's right to use their property that was intentional, and I conclude from the evidence that it was motivated not just out of a legitimate garden-variety boundary dispute, but went well beyond that * * *.

"* * * * *

"[B]ecause of the fact that you had multiple opportunities to make this right, that there were multiple interferences with the plaintiff's use of their property, some award of punitive damages are in order in this case. * * * [S]ometimes an award of punitive damages is appropriate, sort of for the public utility of it of—of encouraging [p]laintiffs to bring claims to right wrongs that would not otherwise be brought because their overall damages are not—not great. And I think this is one of those cases that—to send a message to yourself and to someone else who might be inclined to engage in this kind of self-help, that it's not appropriate."

## C. *Summary Judgment on the Quiet Title Claim*

The parties do not dispute the following additional procedural facts relating to the grant of summary judgment on the quiet title claim. Plaintiff sought to quiet title in Lot 16, alleging that, without legal basis or justification, defendant claimed ownership of all or part of the access lot. In his initial answer, defendant asserted as an affirmative defense ownership of Lot 10 as well as a counterclaim seeking to quiet title in Lot 10. Plaintiff then obtained a preliminary injunction barring defendant from trespassing "on the property commonly referred to as Lot 16 of Linn's Addition as identified by the 2006 and 2008 surveys of Lot 16."

In June 2009, the presiding judge granted a motion allowing defendant to amend his answer to add the co-owners of Lot 16 as additional parties necessary for defendant's quiet title counterclaim. Over the next several months, the court granted two motions by defendant to set over the trial on the basis that defendant needed additional time to join those parties.

Defendant then filed an amended answer, in which he maintained his affirmative defense of ownership, and to which he added the affirmative defense alleging that plaintiff's quiet title claim failed to state a claim due to failure to join necessary and indispensable parties (the co-owners of Lot 16). Defendant's amended answer did not include the quiet title counterclaim that appeared in his initial answer. Nevertheless, in mid-December 2009, defendant made a third request for a setover to allow defendant more time to join the co-owners of Lot 16. The court denied the motion.

Plaintiff subsequently filed a motion for summary judgment on the quiet title claim, arguing that the trial on the trespass and ejectment claims had conclusively established the location of the boundary line between the access strip and defendant's lot, thereby precluding defendant from relitigating that factual issue in the context of a trial on the quiet title claim. Defendant countered that several of the elements necessary for issue preclusion to apply were not satisfied and that, therefore, the boundary line was a genuine issue of material fact precluding summary judgment. Defendant argued specifically that the failure to join the co-owners of Lot 16 in the initial proceeding prevented plaintiff from successfully establishing the particular prerequisites for issue preclusion pertaining to fairness. Defendant relied solely on arguments concerning the applicability of issue preclusion; he did not advance any argument that plaintiff was not otherwise entitled to summary judgment as a matter of law on the quiet title claim.

Some of the proceedings at the trial on the trespass and ejectment claims were relevant to the summary judgment motion on the quiet title claim. As earlier noted, the court dismissed defendant's affirmative defense for failure to join necessary parties and likewise denied, as moot, a motion by defendant—filed that day—seeking to dismiss plaintiff's quiet title claim on the same basis. Leading up to those rulings, the following exchange took place between defendant's counsel and the court:

"THE COURT:   [A]re you still seeking to rely on your fifth affirmative defense, failure to join necessary parties, or is that—

"[DEFENDANT:] We had filed a separate motion to dismiss the claim to quiet title, which I believe was—was still in the amended complaint, even after the presiding judge indicated we were going to bifurcate that aspect of the pleadings. And we—our intention is to—that we leave that to another proceeding, where all of the indispensable parties are present.

"* * * * *

"THE COURT: —Wouldn't you agree that for the purposes of what we're doing here, we don't need anybody else—

"[DEFENDANT:] Right."

Immediately following that exchange, plaintiff expressly flagged the possibility that the trespass and ejectment proceedings could determine the boundary line and might therefore preclude relitigation of that issue with regard to the quiet title claim. The court responded, "I agree it's likely to establish the boundary line as to these—these parties, but it's not going to establish the boundary line as to somebody who's not a party to these proceedings." Defendant and the court then discussed the possible ramifications of the trespass and ejectment proceedings:

"[DEFENDANT:] Well, may I speak to that, Judge, briefly? Our position was, until the presiding judge denied our motion to continue both the trespass and the quiet title action so that they could be brought together so that all the indispensable parties would be present, was because we believed that having all the parties in one room is a predicate to quieting title to the property, which appeared—

"THE COURT: We're not trying a quiet title action.

"[DEFENDANT:] Well, that was—that was the basis for—for attempting to join those parties, because the plaintiff in the com—orig—initial complaint and in the amended complaint had sued to quiet title. So that was in the pleadings, and in the—

"THE COURT: So what's * * * the point here?

"[DEFENDANT:] The point is, is that I think that it is a—it is a mistake, respectfully, to determine a boundary that is binding on some but not all of the parties.

"*****

"THE COURT:   ***[T]hat's not a decision that's going to be made, whether it's binding against him as opposed to the world in this litigation, that would be the next case ***[.] And, you know, I'm going to make findings that are consistent with the issues framed by the pleadings, and it will be subsequent litigation which will decide whether there's been a collateral estoppel made. *** I can't for the world, announce in this case: Mr. Stiglich, you can't ever, you know, claim, you know, forever against, you know, A, B and C or X, Y and Z that this isn't the boundary line.

"*****

"THE COURT:   If you think that's what I'm doing, I'm not.

"[DEFENDANT:]  I'm speaking of Counsel's comments that we're going to have a boundary line between Mr. Minihan and Mr. Stiglich, but with respect to, for example, Mrs. Minihan, that's going to be—that could be a different boundary line. That's where I think the fact that we've got 60 owners of this lot 16 is going to create a—a real problem, if—if we start having different boundaries for different individuals based upon the fact that—

"THE COURT:   No. You *** misunderstood. I said it's going to establish the boundary line as to these two litigants. That's what I said; you weren't listening. I didn't say it was going to establish the boundary line against the rest of the world.

"[DEFENDANT:]   I see. Okay.

"*****

"[DEFENDANT:]   I understand your ruling."

Although upon conclusion of the trial on the trespass and ejectment claims, the trial court deferred ruling on the quiet title claim "unless and until all owners of Lots 10 and 16 are party to this action[,]" the court ultimately adjudicated plaintiff's summary judgment motion without joinder of the other owners of Lot 16. At the urging of the parties, the court resolved the matter on the basis of issue preclusion.

The court made the following findings of fact:

"5. After hearing testimony at trial from surveyors for both parties during trial, the Court found at the conclusion of trial that the methodology used by Compass Engineering, Inc. was more credible and more likely to result in a correct boundary line.

"6. Based on the property boundaries set forth in the Compass Survey, the Court found in favor of plaintiff and against defendant on plaintiff's claims for trespass and ejectment and made the preliminary injunction previously entered in this matter permanent, utilizing the property boundaries monumented and set in the Compass Survey.

"7. The Court could not have determined plaintiff's claims for trespass and ejectment and made the preliminary injunction permanent without first ascertaining the correct boundary line between plaintiff's and defendant's properties, which the Court determined was the boundary line set forth in the Compass Survey."

Based upon those findings of fact, the court then concluded that there were no factual disputes for trial and that

"plaintiff is entitled to judgment in his favor as a matter of law on his claim for quiet title on the ground that defendant is barred by the doctrine of collateral estoppel from claiming any estate, title, claim, lien or any other interest in Lot 16 beyond the property line monumented and set on the Compass Survey."

## D. *Denial of Plaintiff's Motion for Attorney Fees*

Plaintiff filed a motion for an award of his attorney fees under ORS 20.105(1), which the trial court denied. Under that statute, a prevailing party is awarded its attorney fees if the opponent had no "objectively reasonable basis" for its position. When a party appeals an award of attorney fees that is based solely on ORS 20.105(1), "[w]e describe the pleadings, litigation, and evidence * * * without considering the trial court's resolution of disputed historical facts." *Williams v. Salem Women's Clinic*, 245 Or App 476, 478, 263 P3d 1072 (2011).

In his amended answer, defendant asserted that, at the time he purchased Lot 10, the actual boundary line was not known because a monument to the line was missing

and because the prior owner of Lot 10 had maintained part of what turned out to be the access lot in a manner that implied it was actually part of Lot 10 and never informed defendant that it was in fact part of the access lot. As noted above, defendant also alleged that, shortly after purchasing Lot 10, he attempted to locate the boundary line and a county employee informed him—erroneously, as it ultimately turned out—of its location. Defendant allegedly relied on that misidentification of the boundary line when constructing the trespassory trellis, dog run, and fence on Lot 16.

At trial, defendant highlighted certain irregularities indicated by one of the surveys upon which plaintiff primarily relied in proving his case. Defendant relied on the fact that that survey located the boundary line running directly through a part of defendant's home, suggesting that, contrary to common practice and in violation of various building restrictions, there was no setback from the property line.

The court found that, although "defendant's conduct was unreasonable in the extreme and motivated by bad faith, * * * the claims he made at trial and in his pleadings do not warrant an award of attorney's fees pursuant to ORS 20.105(1)." The court reasoned that defendant

"was in possession of a survey prepared by a qualified surveyor which disagreed with the location of that boundary line as determined by the Compass survey. Although I have concluded defendant's survey was flawed and the methodology of Compass was the more comprehensive and correct, it was not objectively unreasonable for defendant to take the position he did on the location of the boundary line. Plaintiff's survey went through a portion of defendant's deck and storage shed. Defendant's advocacy for his survey is therefore understandable."

## II.  ANALYSIS

### A.  *Compensatory and Punitive Damages Awards*

Defendant contends in his first assignment of error that the trial court erred in awarding $10,000 in compensatory damages to plaintiff because the evidence did not justify an award in that amount. Defendant argues that plaintiff failed to properly plead emotional distress damages and that plaintiff did not present evidence of harm sufficient

to support an award of $10,000 in compensatory damages. Plaintiff responds that he adequately pleaded emotional damages and that the evidence was sufficient to support the compensatory damages award.

We first dispose of defendant's argument that plaintiff cannot recover emotional distress damages because plaintiff did not adequately plead them. A plaintiff in an intentional trespass action may recover compensatory damages for both loss of use and emotional distress resulting from a defendant's interference with use and enjoyment of the land. *Hudson v. Peavey Oil Company*, 279 Or 3, 10, 566 P2d 175 (1977) ("Temporary injury * * * justifies damages measured by the loss of use or rental value during the period of the injury[.]"); *McGregor v. Barton Sand & Gravel, Inc.*, 62 Or App 24, 32, 660 P2d 175 (1983) ("We conclude that the *Edwards* [*v. Talent Irrigation District*, 280 Or 307, 570 P2d 1169 (1977)] rule, allowing emotional distress damages for interference with the use and enjoyment of land, is * * * applicable in intentional trespass actions * * *."). Plaintiff alleged that defendant "interfere[d] with [p]laintiff's use of Lot 16 by harassing and threatening" him and that he was damaged by his "inability to * * * enjoy the benefits of ownership" and sought an award of $10,000. Those allegations are sufficient to satisfy the relevant rule regarding claims for relief, ORCP 18, which merely requires "[a] plain and concise statement of the ultimate facts constituting a claim for relief" as well as "[a] demand of the relief which the party claims; [including] if recovery of money or damages is demanded, the amount thereof." ORCP 18.

We also conclude, contrary to defendant's argument, that the evidence supports the compensatory damages award. In doing so, we reject plaintiff's contention that defendant failed to properly preserve his argument that the evidence was insufficient to support the $10,000 compensatory damages award. Defendant's trial-level argument regarding damages included the assertion that plaintiff had not presented evidence of harm that could justify anything but nominal damages. The trial court explained that defendant's extraordinary and intentional behavior was the basis for its award. "We will affirm a trial court's decision on compensatory damages if *any* evidence supports it." *Eden Gate,*

*Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 619, 37 P3d 233 (2002) (emphasis added). At trial, plaintiff offered evidence that defendant intentionally placed several physical barriers on Lot 16 in order to interfere with plaintiff's use of the lot and did so well after he knew that he was trespassing; that defendant's conduct diminished the value of plaintiff's property; and that defendant harassed, threatened, and physically intimidated plaintiff and his wife. Such evidence supports the trial court's award of compensatory damages to plaintiff. *See Senn v. Bunick*, 40 Or App 33, 39, 594 P2d 837, *rev den*, 287 Or 149 (1979); *Lunda*, 46 Or App at 709. We thus affirm that award.

Our decision to affirm the trial court's award of compensatory damages is fatal to defendant's second assignment of error, in which he contends that we should reverse and remand the trial court's award of punitive damages only in the event that we reverse and remand the award of compensatory damages. We therefore affirm the trial court's award of $40,000 in punitive damages to plaintiff.

B. *Summary Judgment on the Quiet Title Claim*

In defendant's third assignment of error, he challenges the trial court's determinations on elements of issue preclusion as a basis to grant plaintiff summary judgment on the quiet title claim. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. Defendant renews his argument that summary judgment was not appropriate because a genuine issue of material fact exists for trial. The manner in which the parties litigated the quiet title claim in the trial court—with a focus solely on the application of issue preclusion—dictates our conclusion that the trial court did not err in the manner defendant specifies on appeal.

Under the doctrine of issue preclusion, a party is bound by the determination of a particular issue in an earlier proceeding. *Nelson v. Emerald People's Util. Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993). "Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding." *Id.* at 103. For issue preclusion to apply,

several conjunctive requirements must be satisfied: (1) the issue in the two proceedings must be identical, (2) the issue must have been "actually litigated" and "essential to a final decision on the merits" in the prior proceeding, (3) the party sought to be precluded must have had a "full and fair opportunity to be heard on that issue," (4) the party sought to be precluded must have been a party or in privity with a party to the prior proceeding, and (5) the prior proceeding must be a type to which a court may give preclusive effect. *Id.* at 104. Even where those elements are met, "[t]he court must also consider the fairness under all the circumstances of precluding a party." *State Farm v. Century Home*, 275 Or 97, 110, 550 P2d 1185 (1976) ("If the circumstances are such that our confidence in the integrity of the determination is severely undermined, or that the result would likely be different in a second trial, it would work an injustice to deny the litigant another chance."). *Id.* at 108.

Defendant contends, as he did in the trial court, that the court erred in foreclosing relitigation of the boundary line because the first, second, and third issue preclusion prerequisites are not satisfied. Defendant also renews his argument that, under all the circumstances, issue preclusion is unfair in this case.

Defendant does not assign error based on either the fourth or the fifth elements of issue preclusion articulated above. We note, however, that the trial on the trespass and ejectment claims in this case is not, in fact, the type of "proceeding" to which the trial court should have given preclusive effect. The doctrine of issue preclusion "applies to subsequent lawsuits and not to *separate claims* within the same lawsuit." *Westwood Corp. v. Bowen*, 108 Or App 310, 315, 815 P2d 1282 (1991), *rev dismissed*, 312 Or 589 (1992) (emphasis in original). Thus, "when an issue common to separate claims has been determined in a *prior separate* action, general principles of issue preclusion may apply." *Westwood Construction Co. v. Hallmark Inns*, 182 Or App 624, 632, 50 P3d 238, *rev den*, 335 Or 42 (2002) (emphasis in original). However, "issue preclusion does not bar relitigation of an issue common to separate claims *when those claims are litigated as part of a single action or lawsuit.*" *Id.* at 631-32 (emphasis in original). Here, therefore, because plaintiff's

quiet title claim was part of the same lawsuit as the trespass and ejectment claims, the trial court should not have applied issue preclusion to prevent defendant from offering further evidence to support his argument regarding the correct boundary line. But because defendant did not make that argument at trial and does not present it on appeal, we will not reverse the trial court's grant of summary judgment on that basis; instead, we treat the litigation of the quiet title claim as a separate "proceeding" for purposes of this appeal.

We turn now to consider the arguments that defendant has raised. We review for errors of law. *State Farm*, 275 Or at 97, 104-05 ("[T]he question on review is whether the evidence is sufficient as a *matter of law* to establish the elements of collateral estoppel." (Emphasis in original.)).

We readily conclude that the first two elements are satisfied because the identical issue—the location of the boundary line—was actually litigated in the trespass and ejectment proceeding and was essential to a final decision on the merits in that proceeding. The summary judgment order makes clear that the parties actively disputed the boundary line in the trespass proceeding and that the court's resulting determination of the line served as a basis for the court's resolution of that proceeding in plaintiff's favor. As noted above, the court wrote that, "[a]fter hearing testimony at trial from surveyors for both parties," it determined that one particular survey was most reliable and, "[b]ased on the property boundaries set forth in" that survey, "found in favor of plaintiff and against defendant on plaintiff's claims for trespass and ejectment." The court also "made the preliminary injunction previously entered in this matter permanent, utilizing the property boundaries monumented and set in" that survey. In other words, as the court found, it "could not have determined plaintiff's claims for trespass and ejectment and made the preliminary injunction permanent without first ascertaining the correct boundary line between plaintiff's and defendant's properties, which the Court determined was the boundary line set forth in the Compass Survey."

Defendant's argument on appeal does little to overcome the trial court's express declaration that the identical issue was actually litigated and essential to the judgment

in the prior proceeding. Indeed, defendant effectively concedes that the parties actually litigated the identical issue in the prior proceeding when he states, "It is true that the trespass/ejectment trial had considerable evidence about boundaries, not only between [defendant's] lot and Lot 16, but between other lots as well. Both parties called surveyors who gave conflicting testimony about the location of the boundary between the lots." Defendant also admits that he "present[ed] evidence that there was a genuine dispute about the location of the property line."

Defendant nevertheless argues that the first two elements are not satisfied because, "in the context of this case, identifying a boundary for purposes of the injunction against trespasses was not the same as identifying a boundary for purposes of quieting title." According to defendant, identification of the boundary line was merely a "secondary issue" in the trespass proceeding, while it was the "primary" issue in the subsequent quiet title proceeding. Defendant asserts that he adduced evidence regarding the boundary line only to the extent necessary to defend against plaintiff's punitive damages and attorney fees claims by showing that his view of its location was reasonable. In other words, defendant contends, the exact location of the boundary line was not essential to the trespass proceeding, and he did not litigate that issue as aggressively as he would have in the context of a trial to quiet title.

Defendant's argument fails for several reasons. First, even if defendant's characterization of the boundary line as a "secondary" issue in the trespass proceeding were accurate, that fact would not bear on the question of whether that issue is identical in each of those proceedings. Second, as we noted in our recitation of the facts, the parties and the court expressly discussed the likelihood that the trespass proceeding would determine the boundary line and might therefore preclude relitigation of that issue in a subsequent trial on the quiet title claim.

Third, the record is replete with comments and assertions made by defendant that belie his argument on

appeal that he did not appreciate the centrality of the boundary line issue to plaintiff's substantive claims in the initial proceeding. For example, at the preliminary injunction hearing, defendant told the court, "I think the dispute is over, you know, where the property line is." Then defendant filed a motion *in limine* to exclude any recitation of facts and evidence received in the preliminary injunction hearing from the trial, which defendant feared would suggest that the preliminary injunction ruling "created a factual finding as to the true boundary line that is binding" and thereby "resolved an issue that actually was an issue of fact for them to decide at trial." Although the court denied that motion, it also ruled that "the preliminary injunction * * * is not the end of the discussion on whether there was a trespass—or where the boundary line was." At trial, in his opening statement to the trial court, defendant framed the case by stating that "the case changed over time, it went from: Where is the boundary and where's the fence? to: Where is the property line? And whether or not [defendant] will accept the Compass survey results for where that line should be." Defendant further asserted at trial that, "very early in the case, the encroaching fence was an issue * * * [b]ut the case continued and went to trial" after removal of the fence "because we ha[d] a reasonable, objectively verifiable difference of opinion of where this property line actually is." Defendant's own comments confirm the trial court's determinations that both parties actually litigated the issue of the boundary line in the trespass proceeding and the issue was necessary to resolve that proceeding.[1]

Defendant argues, finally, that the trial court erred by applying issue preclusion because he did not have a full

---

[1] To the extent that defendant contends that the determination of the boundary line was not "essential" because it might have been possible to render a decision on the trespass claim without the parties litigating where the boundary line was located, we disagree. An issue need not necessarily be literally "essential" to a prior determination to have preclusive effect under the doctrine of issue preclusion. *Westwood Construction Co.*, 182 Or App at 635. "To be sure, cases often refer to whether a previously resolved issue was essential or necessary to a prior adjudication as a means of ensuring, especially in the context of a general verdict or judgment, that the issue was actually litigated and determined in the prior proceeding." *Id.* But where "the face of a judgment or order in a prior proceeding demonstrates that a matter was actually determined, the determination is preclusive." *Id.* at 636. Here, the limited judgment on the trespass claim stated what the property boundaries were.

and fair opportunity to be heard on his quiet title claim and it was thus not fair under all the circumstances to quiet title against him in the manner that the court did. Defendant's argument, however, conflates the specific issue precluded (the boundary line) with the overall claim (quiet title) that is barred as a result of that preclusion.

According to defendant, the manner in which the trial court conducted the case "was manifestly unfair" for two reasons. First, he contends that "the court's repeated statements that the trial did not involve the quiet title action affected the manner in which" defendant presented his case. Second, he argues that the court "unfairly prevented [defendant] from being heard on his defense that it was improper to quiet title without joining all of the Lot 16 owners." Defendant's arguments miss the mark.

The relevant inquiry is not whether he had a full and fair opportunity to present his argument opposing plaintiff's quiet title claim, but whether he had such an opportunity to be heard on the issue of the boundary line. Likewise, we consider the overarching fairness of the trial court's decision to preclude relitigation of the boundary line, not its subsequent decision, based *in part* on the preclusion decision, to grant plaintiff's summary judgment motion on the quiet title claim.

With that orientation in mind, we conclude that defendant had ample opportunity to be heard on the issue of the boundary line. That is evident from our discussion highlighting the significance of that issue to the trial court's disposition of the trespass proceeding, as well as defendant's numerous acknowledgments that he had and took advantage of the opportunity to present evidence on that issue. The third element of issue preclusion that defendant challenges on appeal was satisfied.

We also agree with plaintiff that it was fair under all the circumstances to preclude defendant from relitigating the factual issue of the boundary line. There are no circumstances in this case that "severely undermine" our confidence in the integrity of the court's preclusion determination, nor do we believe "that the result would likely be different in a second trial[.]" *State Farm*, 275 Or at 108-09

(concluding that such circumstances exist where, for example, "it is apparent that the verdict was the result of a jury compromise," the prior determination was "manifestly erroneous," "newly discovered or crucial evidence that was not available to the litigant at the first trial *** would have a significant effect on the outcome[,]" or where "outstanding determinations are actually inconsistent on the matter sought to be precluded").

In sum, we reject defendant's contention that the trial court erred when it concluded that there were no genuine issues as to any facts material to plaintiff's quiet title claim, given that defendant invited the trial court to apply the issue preclusion doctrine when he litigated the summary judgment motion. And, although it is normally inappropriate as a matter of law to quiet title where, as here, it appears that not all persons who have or may have an interest in the property are parties to a proceeding, *see State ex rel Dept. of Trans. v. Tolke*, 36 Or App 751, 753 n 2, 586 P2d 791 (1978), such nonjoinder will not serve as a basis for reversing a trial court's quiet title judgment when the losing party fails to properly assign error to the nonjoinder. *Id.* at 766. Although defendant does argue that the trial court failed to join the co-owners of Lot 16, he deploys that argument only as part of his challenge to the trial court's determinations on the elements of issue preclusion, the same framework he presented first to the trial court. Defendant has not assigned error to the trial court's dismissal of his affirmative defense based on nonjoinder of necessary parties, leaving us with no basis upon which we could reverse the trial court's judgment quieting title. Therefore, we affirm the court's summary judgment ruling.

C. *Denial of Plaintiff's Motion for Attorney Fees*

We now turn to plaintiff's appeal concerning the denial of his motion for attorney fees under ORS 20.105(1). As relevant to this case, ORS 20.105(1) provides:

> "In any civil action, suit or other proceeding in a circuit court ***, the court shall award reasonable attorney fees to a party against whom a *** defense *** is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the ***defense ***, upon a

finding by the court * * * that there was no objectively rea-
sonable basis for asserting the * * * defense[.]"

A defense lacks an objectively reasonable basis only if
it is "entirely devoid of legal or factual support," *Olson v.
Howard*, 237 Or App 256, 269, 239 P3d 510 (2010), either
at the time it is made or, "in light of additional evidence or
changes in the law," as litigation proceeds, *Dimeo v. Gesik*,
197 Or App 560, 562, 106 P3d 697 (2005). Whether a claim
lacks an objectively reasonable basis is a question of law,
and we review the trial court's ruling on that question for
legal error. *Williams*, 245 Or App at 482.

Here, the trial court concluded that defendant had
an objectively reasonable basis to defend against the tres-
pass and ejectment claims because he possessed "a survey
prepared by a qualified surveyor which disagreed with the
location of the boundary line as determined by the Compass
survey." We agree. The survey that defendant commissioned
supported the notion that prior surveys and representations
of the boundary line's location might not be completely accu-
rate. Given that those other surveys and representations are
precisely what defendant contested, it follows that the sur-
vey that he commissioned represented an objectively reason-
able basis upon which to defend against plaintiff's trespass
and ejectment claims.

Plaintiff argues that the better evidence has always
been that the boundary line lay where plaintiff has asserted
from the outset of the dispute and that, therefore, defen-
dant "knew or should have known" where the boundary
line was located well before acquiring the survey referenced
in the trial court's money award. There are two problems
with plaintiff's argument. First, the relevant inquiry is not
whether defendant's evidence was less persuasive (either
in terms of its weight or volume) than other, contrary or
competing evidence. The question is whether there was
*any* evidence to support the trial court's conclusion that
defendant had an objectively reasonable basis to defend the
action. The Chase Jones survey and the survey showing the
boundary going through defendant's improvements on his
property constituted such evidence. Second, even assuming
that defendant should have known where the boundary line

was and that he acted in bad faith, as plaintiff's argument implies and the trial court expressly noted, it is well established that a party's subjective state of mind is not relevant to our analysis of the propriety of a fee award under ORS 20.105; even "bad faith and improper motives are not relevant considerations in determining whether an award of attorney fees is required under ORS 20.105(1)." *Hunt v. City of Eugene*, 249 Or App 410, 432, 278 P3d 70, *rev den*, 353 Or 103 (2012) (collecting cases).

Plaintiff also contends that, even if the Chase Jones survey—which defendant commissioned early in the litigation—provided defendant with an objectively reasonable basis for continuing the litigation, defendant lacked such a basis prior to receiving the results of that survey, including when he filed his answer. Although it is true that the Chase Jones survey is the only specific documentary evidence that the trial court cites in its ruling denying plaintiff attorney fees, the trial court did find that "the claims [defendant] made at trial *and in his pleadings* do not warrant an award of attorney's fees." (Emphasis added.) Given that, at the hearing on plaintiff's motion for fees, defendant asserted that the record revealed nine facts that individually and collectively rendered defendant's litigation objectively reasonable, including documentary evidence that could tend to support defendant's understanding of the boundary line, as well as, conversely, evidence suggesting that the bases for plaintiff's assertion regarding the boundary line were potentially inaccurate, several of which predate plaintiff's complaint, we do not find plaintiff's argument persuasive.

We decline to reach plaintiff's other argument on his appeal because it is unpreserved. Plaintiff argues for the first time on appeal that the legislature's reference in ORS 20.105(1) to "defense" in the singular indicates that attorney fees can be awarded on a defense-by-defense basis depending on whether each one was objectively reasonable. He urges us to consider his new argument because it is based on construction of the relevant statute's text, relying on *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties."). However, our duty under *Stull* is limited to circumstances in

which, unlike here, "an issue of statutory construction [has been] presented to a trial court and the court's interpretation of the law is at issue on appeal[.]" *State v. Hardesty*, 238 Or App 146, 151, 241 P3d 741 (2010), *rev den*, 349 Or 654 (2011). Thus, we affirm the trial court's denial of plaintiff's motion for attorney fees.

In A144998 and A145972, affirmed.