IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

QUARREN AVAKIAN,                )
                                )
        Plaintiff,              )    TC-MD 210326G
                                )
    v.                          )
                                )
DEPARTMENT OF REVENUE,          )
State of Oregon,                )
                                )    **ORDER ON DEFENDANT'S MOTION**
        Defendant.              )    **FOR PARTIAL SUMMARY JUDGMENT**

Defendant moves for partial summary judgment by reason of issue preclusion on

Plaintiff's claims to reinstate disallowed 2013, 2014, and 2015 net operating loss (NOL)

carryover deductions. Those deductions were carried over from a claimed 2012 loss eliminated

by adjustments upheld in *Avakian v. Department of Revenue*, TC–MD 180258N, 2019 WL

2571069 (Or Tax M Div June 21, 2019) (*Avakian I*).

Plaintiff died of brain cancer while this motion was being briefed. He remains

represented by the same lawyer who represented him in in *Avakian I* and at the audit for the

2013, 2014, and 2015 tax years, which had begun before trial in *Avakian I*.

## I. FACTS

In *Avakian I*, Plaintiff asserted several claims pertaining to his 2012 tax liability, but

presented evidence for only one. At the trial in 2019, his lawyer stated: "We realize there's a

lack of documentation for the other issues, so without conceding any of those, we're going to

focus on the shareholder payable." The court ultimately found against Plaintiff on the

shareholder payable issue (involving nearly $400,000 in disallowed costs of goods sold) and

denied his appeal. As a consequence, all of Defendant's adjustments were left in place and

Plaintiff had no NOL for 2012.

Plaintiff's widow believes Plaintiff was "unable to effectively manage his businesses' finances and records as his health and cognitive function declined during the last few years of his life." (Ladonna Avakian Decl, July 12, 2022, ¶ 4.) After Plaintiff's death, Mrs. Avakian found more than 100 boxes of business records "in various locations, including at [Plaintiff's] house in his shop, office, attic, closets, and stacked on scaffolding[,]" as well as "two truckloads of boxes from [Plaintiff's] gas station." (*Id.*, ¶ 2). As of July 12, 2022, she had identified documents relevant to the *Avakian I* litigation in five of those boxes, "mixed in with records from other tax years[.]" (*Id.*, ¶ 3.) She believes documents relevant to *Avakian I* may be found in many of the other boxes, too. (*Id.*)

Examples of documents uncovered by Mrs. Avakian include a receipt for $951.11 in cigarette and tobacco purchases (Paris Decl, Ex 3 at 1); a handwritten note—possibly on a check stub—consisting of the words "Ladonna Wiseman", "4-30-12", "office expense", and "$900" (*id.*, Ex 4 at 1); customer purchase receipts and $15 fuel discount cards possibly showing as much as $2,000 worth of discounts (*id.*, Ex 5 at 1–224); a canceled check showing payment of $3,389 on a fuel invoice (*id.*, Ex 6 at 1–2); and invoices for approximately $4,800 of grocery purchases (*id.*, Ex 7 at 1–13). The grocery purchase invoices are purportedly a small sample of a large number of similar invoices (described as "receipts" by Plaintiff's counsel). (*Id.*, ¶ 3e.)

Among other claims in the present case, Plaintiff challenges Defendant's disallowance of NOL carryover deductions flowing from the loss he originally reported for 2012. Defendant moves for summary judgment on those claims.

/ / /

/ / /

/ / /

## II. ANALYSIS

The issue is whether Plaintiff is precluded from seeking a ruling that he is entitled to NOL deductions carried over from 2012 after having previously litigated and lost a bid to reverse adjustments eliminating his reported 2012 losses.

A.     *Issue Preclusion*

Issue preclusion, once known as collateral estoppel, "arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding." *Nelson v. Emerald People's Util. Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993). Where an issue has been decided by one tribunal, "the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met:

> "1. The issue in the two proceedings is identical.
>
> "2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
>
> "3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.
>
> "4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.
>
> "5. The prior proceeding was the type of proceeding to which this court will give preclusive effect."

*Id*. at 104 (citations and footnote omitted).

Issue preclusion serves "to protect parties from unnecessary and redundant litigation, to conserve judicial resources, and to foster certainty in and reliance on judicial action." *Monahan v. Comm'r*, 109 TC 235, 240 (1997). Where issue preclusion applies, there will generally be some level of uncertainty about the accuracy of the prior judgment: "[T]he prior judgment is treated as conclusive, not because it is actually conclusive evidence of the ultimate truth as to

those issues necessarily determined, but because of the public interest in the finality of judgments and in the efficient administration of justice." *In re Gygi*, 273 Or 443, 448–49, 541 P2d 1392 (1975) (quoted in *State Farm Fire & Cas. Co. v. Century Home Components, Inc.*, 275 Or 97, 107, 550 P2d 1185 (1976) (*Century Home*)). The purpose of protecting the authority of judicial decisions "would obviously be ill-served by refusing to give effect to a prior determination on the hypothetical possibility of a contrary decision if the case were continuously retried." *Century Home*, 275 Or at 108.

Nevertheless, issue preclusion is not applied where "circumstances are such that our confidence in the integrity of the determination is severely undermined, or that the result would likely be different in a second trial[.]" *Century Home*, 275 Or at 108. Examples of such circumstances include where a verdict is obviously the result of a jury compromise, where the prior determination is manifestly erroneous, and where there is "newly discovered or crucial evidence that was not available to the litigant at the first trial * * * where it appears the evidence would have a significant effect on the outcome." *Id*. at 108–09.

Authorities differ on whether the test announced in *Century Home* is independent of the third *Nelson* factor. *Compare Minihan v. Stiglich*, 258 Or App 839, 855, 311 P3d 922 (2013) (stating court must consider "fairness under all the circumstances" per *Century Home* even if *Nelson* elements satisfied) *with In re Tolley*, 3:20-AP-03112-DWH, 2021 WL 6067046 at *4 (BAP 9th Cir Dec 21, 2021) (stating Oregon courts consider fairness inquiry under *Century Home* identical with third *Nelson* test). Without deciding the question, the court follows both parties in analyzing the *Century Home* test apart from the third *Nelson* factor.

In the present case, Plaintiff does not dispute that the first, second, fourth, and fifth conditions enumerated in *Nelson* are satisfied. The facts underlying this case—Plaintiff's

claimed 2012 losses—were actually litigated by these parties in this court and were essential to the decision in *Avakian I*.

Plaintiff argues under the third *Nelson* condition that he lacked a "full and fair opportunity" to litigate *Avakian I* because of his health problems and because his 2012 tax liability did not provide him with an adequate incentive to litigate. Plaintiff further argues under *Century Home* that issue preclusion would be unfair here because newly discovered evidence shows the likelihood of a different result if the issue of his 2012 income were retried.

B. *Full and Fair Opportunity to Be Heard*

The third *Nelson* condition requires that "[t]he party sought to be precluded has had a full and fair opportunity to be heard on that issue." *Nelson*, 318 Or at 104. Here, Plaintiff does not contend that the court denied him such an opportunity in *Avakian I*. Instead, Plaintiff argues that his undetected cognitive decline caused him to not have a full and fair opportunity to be heard. He also argues that he lacked motivation to fully litigate 2012 because of an insufficient amount in controversy.

1. *Cognitive Decline*

Plaintiff's widow has declared her belief that Plaintiff was "unable to effectively manage his businesses' finances and records as his health and cognitive function declined during the last few years of his life." (Ladonna Avakian Decl, July 12, 2022, ¶ 4.) At the time of the *Avakian I* litigation, Plaintiff had been diagnosed with cancer, albeit not the brain cancer that ultimately killed him. The primary evidence put forward to suggest Plaintiff was then experiencing cognitive decline is the quantity of additional documents discovered by Mrs. Avakian after Plaintiff's death. The suggestion is that, had Plaintiff been fully in possession of his faculties, those documents would have been produced.

Although the parties' briefs do not address whether a "full and fair opportunity to be heard" encompasses good health in addition to the due process that is within a tribunal's control, our Supreme Court's precedent suggests it does not. Discussing the third *Nelson* factor, the court inquired into whether a litigant was "legally prevented" from offering proof to the tribunal. *Barackman v. Anderson*, 338 Or 365, 371, 109 P3d 370 (2005) (holding litigant had not shown "that the forum somehow prevented her from offering the proof that she needed to show to prevail").

The evidence tends to show that Plaintiff actively participated in the *Avakian I* litigation. Acting through counsel at that time, Plaintiff agreed to trial dates and produced thousands of pages of documents. (Weirnick Supp Decl, ¶ 2; Weirnick Decl, Ex C at 41.) At trial, Plaintiff personally testified. *Avakian I*, 2019 WL 2571069 at *1. Plaintiff's counsel has stated, at oral argument on the present motion, that he did not detect any lack of capacity on Plaintiff's part at the time. Furthermore, while Mrs. Avakian considers cognitive decline a factor in the mismanagement of Plaintiff's business records, she states that the "incompetence" of Plaintiff's bookkeepers was "the primary factor that resulted in the disorder and disorganization" of those records. (Ladonna Avakian Decl, ¶ 4.)

The court afforded Plaintiff every opportunity to be heard in *Avakian I*, and he in fact testified personally at trial after engaging in extensive discovery. Moreover, Plaintiff had a right to appeal that decision for a *de novo* proceeding in the Regular Division, but did not do so. Even if it were assumed that undetected cognitive decline could be relevant to the third *Nelson* factor, the evidence of such a decline is inconclusive. There are many reasons why Plaintiff might not have produced the documents found since his death. It is possible, for example, that Plaintiff judged the boxes irrelevant, or at least not worth the time and expense needed to sort through

them, given that records pertaining to 2012 were "mixed in with records from other tax years." (Ladonna Avakian Decl, ¶ 3.) Plaintiff's argument based on cognitive decline does not succeed.

2.     *Incentive to Litigate*

Regarding the economic incentive to litigate, Plaintiff contends that the stakes in the present case are "vastly higher" than they were in the 2012 litigation. Plaintiff's 2012 liability was $174,354, whereas his total liability for 2013, 2014, and 2015 is $529,976. (Ptf's Response at 3.)

Our Supreme Court has flatly stated that whether an economic incentive to litigate was lacking at a prior forum, by itself, "is not related to the third consideration under *Nelson*[.]" *Barackman*, 338 Or at 371. Nevertheless, Plaintiff relies on a Court of Appeals case, *Miller v. Board of Psychologist Examiners*, 289 Or App 34, 42, 407 P3d 935 (2017), in which the court reasoned that the plaintiff's relative lack of incentive to litigate a license suspension, as compared to a permanent revocation, contributed to rendering a hearing on the former matter nonpreclusive under the third *Nelson* factor.[1]

A crucial fact in *Miller* was that the forum had notified the plaintiff of two hearings—one on the suspension allegations, followed by another on the revocation allegations—and that going into the suspension hearing she reasonably believed she would "have an opportunity to present different witnesses and evidence at a new hearing on the more severe permanent revocation allegations" a few weeks later. *Miller*, 289 Or App at 42. The forum subsequently canceled the latter hearing, leaving the plaintiff unable to present additional evidence. Because the first "low

---

[1] Although the court in *Miller* stated it was resolving the case "under the third *Nelson* factor," its reasoning suggests it was making a broader fairness inquiry, such as Plaintiff raises in this case under *Century Home*. *See Miller*, 289 Or App at 41. The *Miller* court cites *Minihan*, 258 Or App at 855, for the proposition that "[e]ven where [the *Nelson*] elements are met, the court must also consider the fairness under all the circumstances of precluding a party." *Id*.

stakes" hearing had been held under the reasonable belief that a second "high stakes" hearing would follow, the first hearing alone had not constituted a full and fair opportunity to be heard on the more serious allegations. In *Miller*, the incentive-to-litigate concern was inextricably bound up with the forum's decision to cancel a previously noticed hearing.

Here, unlike in *Miller*, no reasonable expectation of a second hearing for higher stakes was denied. In fact, Plaintiff chose not to appeal to the Regular Division for a *de novo* proceeding. What is more, Plaintiff's returns for 2013, 2014, and 2015 were under audit at the time of trial in *Avakian I*. The stakes of the 2012 litigation included the subsequent years' NOL carryovers, and Plaintiff knew it going into trial. Finally, the distinction between liabilities of $174,354 and $529,976 is a matter of degree within the same order of magnitude; it is qualitatively different than the distinction between a temporary suspension and a permanent revocation in *Miller*. Under *Barackman*, it is doubtful that incentive to litigate plays in to the third *Nelson* factor, but even under the broader fairness inquiry of *Miller*, the circumstances of *Avakian I* do not suggest that Plaintiff was insufficiently motivated.

The evidence indicates Plaintiff had a full and fair opportunity to be heard on the issue of his reported losses for 2012. The five *Nelson* requirements for issue preclusion are therefore satisfied here. *See* 318 Or at 104.

C.      *Newly Discovered Evidence*

Relying on *Century Home*, Plaintiff argues that even if the *Nelson* requirements are satisfied, issue preclusion should not apply here because newly discovered evidence would likely result in a different outcome were the issue to be retried. "[T]he existence of newly discovered or crucial evidence that was not available to the litigant at the first trial would provide a basis for

/ / /

denying preclusion where it appears the evidence would have a significant effect on the outcome." *Century Home*, 275 Or at 108–09.

Here, Plaintiff's widow has located "more than 100 boxes" of records since Plaintiff died. (Ladonna Avakian Decl, ¶ 2.) Those boxes were found in Plaintiff's home and at Plaintiff's business. (*Id*.) She has identified five boxes containing records relevant to 2012 and believes there are many more. (*Id*., ¶ 3.)

To warrant a retrial, new evidence must not have been available to the litigant. *See Century Home*, 275 Or at 108–09. Here, all of the new documents were either found in Plaintiff's home or delivered by Plaintiff's business. The argument that those documents were not available to Plaintiff during the *Avakian I* litigation requires an inference that Plaintiff was too sick to locate them at that time. As discussed above with respect to Plaintiff's opportunity to be heard, the evidence does not show that Plaintiff was incapable of participating in discovery. To the contrary, the evidence indicates Plaintiff provided his counsel with thousands of pages of discovery and personally appeared at trial. The additional boxes of documents found after Plaintiff's death were available to him during the 2012 litigation.

Even if the new documents had not been available to Plaintiff, they would not warrant a retrial unless it appeared they "would have a significant effect on the outcome." *See Century Home*, 275 Or at 108–09. Plaintiff alleges that the documents he now provides are evidence relevant to adjustments by Defendant totaling $149,850. (*See* Ptf's Surreply at 3.) However, Plaintiff's 2012 net income was adjusted from a $372,559 loss to a $1,295,542 gain. (Paris Decl, Ex 1 at 2.) Plaintiff would thus need to show almost $1.3 million in deductible 2012 expenses to carry forward any losses to the years now at issue. He alleges documents relevant to adjustments totaling only twelve percent of that amount.

Because the additional documents were available to Plaintiff during the 2012 litigation, and because those documents would not establish any NOL carryovers for the years now at issue, a retrial on the 2012 losses is not warranted. *See Century Home*, 275 Or at 108–09. Plaintiff had a full and fair opportunity to litigate the issue of his 2012 losses in *Avakian I* and his present claims regarding the 2013, 2014, and 2015 NOL carryover deductions involve the same issue. Now, therefore,

IT IS ORDERED that Defendant's Motion for Partial Summary Judgment be and hereby is granted. Plaintiff is precluded from contesting Defendant's disallowance of NOL carryover deductions reported on his 2013, 2014, and 2015 returns based on an NOL generated in 2012.

IT IS FURTHER ORDERED that, as previously agreed by the parties in the event of Defendant's motion being granted, the trial currently set for five days beginning November 29, 2022, be reset for three days beginning November 30, 2022.

IT IS FURTHER ORDERED that a remote pretrial conference be set for 1:15 on November 9, 2022. Notices will issue separately.

Dated this _____ day of August 2022.

POUL F. LUNDGREN
MAGISTRATE

*This interim order may not be appealed. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved. ORS 305.501.*

*This document was signed by Magistrate Poul F. Lundgren and entered on August 29, 2022.*